**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

JEFFERY BUONGIORNO,

     *Plaintiff,*

vs.                                                    CASE NO.:      9:24-cv-80920-AMC

ALEJANDRO MAYORKAS, in his
official capacity as the Secretary of
the United States Department of
Homeland Security, et al.,

     *Defendants.*

_____/

**DEFENDANTS' JOINT MOTION TO**
**DISMISS SECOND AMENDED COMPLAINT**

Defendants James Cord Byrd, in his official capacity as the Secretary of State of the State of

Florida (Byrd), Ashley Moody, in her official capacity as the Attorney General of the State of Florida

(Moody), Maria Matthews, in her official capacity as the Director of the Division of Elections,

Florida Department of State (Matthews), Shevaun Harris, in her official capacity as the Secretary of

the Department of Children and Families of the State of Florida,[1] Dave Kerner, in his official

capacity as the Chief Administrator of the Florida Department of Highway Safety and Motor

Vehicles (Kerner) together with Greg Weiss, in his official capacity as Palm Beach County

---

[1] Secretary Harris was named as a Defendant in the initial Complaint [ECF 1] and the Amended
Complaint, ECF 17, and served on August 7, 2024. ECF 19 However, Plaintiff has neither named
Secretary Harris as a Defendant in the Second Amended Complaint nor voluntarily dismissed his
claims against her. In addition, Judges Laura Burke, Stephanie Tew, and April Bristow were named
as Defendants in their official capacities as members of the Palm Beach County Canvasing Board in
both the Complaint and Amended Complaint but not in the Second Amended Complaint, and have
not been voluntarily dismissed. Defendants request entry of a separate order formally dismissing
Secretary Harris and Judges Burke, Tew, and Bristow.

Commissioner for District 2, Maria Marino, in her official capacity as Palm Beach County Commissioner for District 1, Wendy Sartory Link, in her official capacity as Palm Beach County Supervisor of Elections, and Ric Bradshaw, in his official capacity as the Sheriff for Palm Beach County and Mi Familia Vota (collectively the Defendants), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(2), 12(b)(1), and S.D. Fla. Rule 7.1, move to dismiss Plaintiff's Second Amended Complaint and as good cause therefore would show:

1.     Plaintiff's Second Amended Complaint is not a model of clarity. It claims to set forth causes of action against the Defendants for declaratory and injunctive relief based on the following grounds: Claim to Compel Deprivation of Civil Rights – All Defendants (Count 1); Conspiracy (Count 2); Negligence (Count 3); and violation of the First Amendment in Count 4.

2.     The general allegations of the Second Amended Complaint do not make it at all clear what Plaintiff seeks to enjoin the State Defendants from doing, or the basis by which Plaintiff seeks declaratory or injunctive relief. Paragraph 8 apparently seeks to enjoin the Defendants from mailing ballots to registered voters who have requested vote-by-mail ballots, but that paragraph is not incorporated into any of the counts against them. Paragraph 15 alleges that this is an action "seeking declaratory and injunctive relief to address the upcoming November, 2024 elections by registering non-citizens as voters, thereby unlawfully obtaining Vote-By-Mail ballots…" but is incorporated only into Count 1.[2] Paragraph 16 alleges that "the Second Amended Complaint is an action seeking declaratory and injunctive relief to enforce public records requests." However, the Second Amended Complaint contains no allegations that Plaintiff has made a public records request upon any of the named Defendants. Paragraphs 15 and 16 are incorporated only into Count 1 but not Counts 2, 3, or

_____

[2] Defendants presume that, the title of Count 2 notwithstanding, Plaintiff does not seek to compel them to provide non-citizens with vote-by-mail ballots.

4.

3.      Paragraph 33 of the Second Amended Complaint alleges that this Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983, 18 U.S.C. § 611, 18 U.S.C. § 1015, and "U.S.C. § 20507" (apparently 52 U.S.C. § 20507). However, paragraph 33 is not incorporated into any of the four counts contained in the Second Amended Complaint, which therefore fails to set forth a "short and plain statement of the grounds for the court's jurisdiction" as required by Fed. R. Civ. P. (8)(a)(1). In fact, paragraphs 1 through 9, 17 through 71, 94, 100 through 103, 105 through 108, 111, 112, and 118 through 136 are not incorporated into *any* of the four counts of the Second Amended Complaint and are therefore irrelevant to any of the claims asserted or relief sought.

4.      The Second Amended Complaint alleges in exceedingly vague terms, unsupported by any allegations of fact, that Defendants have conspired with each other, non-citizens, and others to allow non-citizens to register to vote in contravention of state and federal law. For example:

a.      Paragraph 50 alleges that "[t]his loophole of allowing a person to become registered to vote without having a photo ID has been exploited by Defendants." However, the Second Amended Complaint does not allege which Defendants have exploited this alleged loophole, or how they have allegedly done so. This assertion is unsupported by a short and plain statement showing that Plaintiff is entitled to relief as required by rule 8(a)(2) and reflects nothing more than rumor, Plaintiff's opinion, or a conspiracy theory. Again, paragraph 50 is not incorporated into any of the Second Amended Complaint's four counts.

b.      Paragraph 72 alleges that Secretary of State Byrd "turn [sic] a blind eye" to alleged computer irregularities in Palm Beach County during the 2022 and 2024 primary elections. However, the Second Amended Complaint contains no short and plain

statement establishing the truth of this factual allegation, explaining why this opinion is relevant to whatever relief is sought, or attempting to explain what responsibility Secretary Byrd has to oversee the operation of the Palm Beach County Supervisor of Elections' computer system. Further, paragraph 72 has only been incorporated into Count 3 alleging negligence against all Defendants, but not Counts 1, 2, or 4.

     c.     Preposterously, in paragraph 75 "Plaintiff alleges a massive conspiracy by Defendants (and others across Florida) to comingle large numbers of fraudulent ballots with the much smaller number of legitimate early vote ballots" but then states that these baseless allegations are "beyond the scope of this [Second Amended Complaint.]" To put it more bluntly, Plaintiff claims that the State Defendants are participants in a "massive conspiracy" but cannot produce even a scintilla of evidence to support that scurrilous allegation. In any event, paragraph 75 is incorporated into only Count 3 alleging negligence against all Defendants and not into Counts 1, 2, or 4. The Second Amended Complaint is rife with such defamatory allegations of malfeasance unsupported by any factual allegations.

5.     All claims made against all Defendants in the Second Amended Complaint must be dismissed for the following reasons:

     a)  Plaintiff cannot establish Article III standing and this Court therefore lacks subject matter jurisdiction as required by Federal Rule of Civil Procedure 12(b)(1);

     b)  Failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6);

     c)  This Court lacks subject matter jurisdiction because the Second Amended Complaint is patently insubstantial;

d)  The Second Amended Complaint, like the Amended Complaint before it, is an impermissible shotgun pleading;

e)  The State Defendants are entitled to Eleventh Amendment immunity concerning Plaintiff's claims for common law conspiracy in Count 2 and negligence in Count 3.

f)  Plaintiff has failed to provide the notice required by the NVRA to bring and maintain a private cause of action under the National Voter Rights Act;

g)  Plaintiff cannot bring a civil action to enforce federal criminal statutes; and

h)  This Court cannot assert personal jurisdiction over Defendant Mi Familia Vota because it does not have minimum contacts with the State of Florida.

## MEMORANDUM OF LAW

**I.      Plaintiff Lacks Article III Standing as to all Counts.**

Federal court jurisdiction is limited to actual cases and controversies. U.S. Const., Art. III, § 2. "Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute." *Jacobson v. Fla. Sec. of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). "If at any point a federal court discovers a lack of jurisdiction, it must dismiss the action." *Id.* To establish standing, Plaintiff must show (1) injury-in-fact, meaning a concrete and particularized invasion of a legally protected interest; (2) a causal connection, or traceability, between that injury and the complained-of conduct; and (3) redressability, meaning a favorable decision would eliminate the injury. The party seeking to invoke federal jurisdiction bears the burden of establishing these elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

As a threshold matter, Plaintiff cannot show that he has suffered a concrete and particularized injury in fact. "By particularized, we mean that the injury must affect the plaintiff in a personal and

individual way." *Lujan*, 504 U.S. at 560 n. 1. "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury must also be 'concrete.'" *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* Speculative fears of future injury are insufficient to establish Article III standing and therefore insufficient to establish subject matter jurisdiction. *City of South Miami v. Governor, State of Fla*., 65 F.4th 631, 639 (11th Cir. 2023).

Plaintiff claims that he "will suffer [injury]" as a candidate for Palm Beach County Supervisor of Elections and "as a citizen" based on his unsupported allegations of Defendants engaging in farfetched conspiracy theories with each other, "illegal aliens," "and others across Florida." ECF 42 at ¶¶ 142, 75, 159, 161, 163, 167-171, 180, 181. Plaintiff asserts, again without the benefit of any supporting factual allegations, that Defendants' malfeasance has resulted in a "failure[] to result in accurate voter rolls." *Id.* at ¶ 142. First, Plaintiff's speculative fears that he "will suffer" (ECF 42 at 142) future harm do not establish Article III standing. *City of South Miami,* 65 F.4th at 639. "[W]hen plaintiffs seek prospective relief to prevent future injuries, they must prove that their threatened injuries are 'certainly impending.'" *Jacobson,* 974 F.3d at 1245, quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 401 (2013). Given the Second Amended Complaint's "naked assertions devoid of further factual enhancement," Plaintiff cannot show a concrete, particularized injury even at the pleading stage, as any alleged injury would be to the public at large and not to him alone.

Further, because the vague, conclusory allegations of the Second Amended Complaint do not establish that Plaintiff has or will suffer a concrete, particularized injury in fact, it follows that Plaintiff cannot satisfy the traceability or redressability elements of standing, either. *See Jacobson*, 974 F.3d at 1254 ("Because the Secretary will not cause any injury the voters and organizations

might suffer, relief against her will not redress that injury – either directly or indirectly.") (cleaned up).

Plaintiff cannot establish Article III standing on his First Amendment claim for the additional reason that his claims are not ripe. Ripeness relates to Article III limitations on Article III standing in a temporal manner and aims to avoid placing federal courts in the position of having to make premature adjudications. *See Abbot Labs v. Gardner*, 387 U.S. 136, 148-49 (1967). Plaintiff must allege more than some future acts or events that "may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 284 (6th Cir. 1997). Here, Plaintiff only articulates future events that may not occur as he expects or may not occur at all. He instead seeks to prevent alleged irreparable harm that would occur "*if Plaintiff suffers future violations of his First Amendment rights.*" ECF 48 at ¶ 2 (emphasis added). Plaintiff does not know that his First Amendment rights will be violated in the future, and even if they were, he cannot predict how they will be violated or the effect such potential violations may have.

In short, the allegations of the Second Amended Complaint are so deficient that Plaintiff cannot establish Article III standing, and the Second Amended Complaint must therefore be dismissed.

## II.      Failure to State a Claim Upon Which Relief Can be Granted.

### A.  Legal standard

The Second Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. "The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2) which requires a 'short and plain statement of the claim showing that the

pleader is entitled to relief.'" *Coffie v. Fla. Crystals Corp.,* 460 F. Supp. 3d 1297, 1303 (S.D. Fla. 2020). Under the federal pleading standard, a complaint must contain a "plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). Dismissal is warranted if a complaint relies on "naked assertions devoid of further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Coffie*, 460 F. Supp. 3d at 1303-04.

"When a complaint is challenged under Rule 12 (b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff." *Coffie*, 460 F. Supp. 3d at 1304, citing *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, allegations that are no more than conclusions are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. at 678-79; *see also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.") In order to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level…" *Twombley*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. at 679. The Second Amended Complaint does not contain factual allegations that raise a right to relief above the speculative level and therefore does not state a plausible claim.

## B.  Count 1

The allegations of the Second Amended Complaint are completely unsupported by factual allegations and consist of nothing more that naked conclusions, supposition, and conspiracy theories. As to the paragraphs incorporated into Count 1, paragraph 16 merely makes the claim that "non-

citizens and synthetic entitles" are being registered to vote without any supporting factual allegations. Paragraphs 138 and 139 imply that non-citizens are being added to the voter rolls and are voting, but again these implications are not supported by any allegations of fact. Paragraph 141 offers the mere conclusion, again unsupported by any allegation of fact, that Defendants Byrd and Matthews "have failed to make reasonable efforts to conduct voter list maintenance as required by the [National Voter Registration Act]." Secretary Byrd and Director Matthews are the only Defendants even mentioned in Count 1, and the allegations against them are nothing more than conclusions that are not entitled to the presumption of truth. No mention is made of any of the other Defendants in Count 1. Count 1 therefore fails to "raise a right to relief above the speculative level," *Twombley*, 550 U.S. at 555, and must be dismissed.

### C.  Count 2

The allegations contained within Count 2 fare no better. Paragraphs 86 through 93 claim that, in Plaintiff's unqualified opinion, the Palm Beach Supervisor of Elections' computer system is unreliable, that a "new report" "made available on the public request portal" was "clearly fabricated," and that "Defendants Weiss, Marino, and Link conspired to conceal th[at] information." Paragraphs 100 through 104 speculate as to a motive for the alleged suppression of Plaintiff's First Amendment rights at meetings of the Palm Beach County Canvasing Board and make an irrelevant statement concerning Arizona law. Paragraphs 109 and 110 allege that Defendants Link, Weiss, and Marino "conspired to withhold critical election night reporting." These are nothing more than spurious allegations, devoid of factual support, that are not entitled to the presumption of truth.

Paragraphs 148 through 159 allege that all Defendants conspired to violate various federal criminal statutes. For example, paragraph 152 alleges that Mi Familia Vota has conspired with "illegal aliens" to register those aliens to vote in Florida in violation of 18 U.S.C. § 611, and

paragraph 154 alleges that Secretary Byrd and Attorney General Moody "are conspiring to violate U.S. Code § 611 [sic] by refusing to enforce the law."  Defendants Byrd, Matthews, Marino, Weiss, and Link are allegedly conspiring to violate 18 U.S.C. § 241 because Plaintiff believes that their alleged reports of "blank ballots" are "implausible." Paragraph 157 alleges that "Defendants" are conspiring to violate 18 U.S.C. § 242, and paragraphs 158 and 159 allege that now-dismissed Defendants Mayorkas and O'Malley are conspiring to violate 18 U.S.C. § 1015. Again, these statements are nothing more that Plaintiff's conclusions and are wholly unsupported by any allegations of fact and are not entitled to the presumption of truth.

Paragraphs 160 and 161 allege that all Defendants "conspired with illegal aliens to register and vote" in violation of section 97.041, Florida Statues, and are "organizing elaborate scheme [sic] to register illegal aliens into the voting system." Paragraph 162 again alleges that Mi Familia Vota has conspired with dismissed Defendants Mayorkas and O'Malley and illegal aliens, and "have been part of recent proven examples of illegal aliens registering to vote in Florida," but does not identify any such "proven examples." Paragraph 163 again alleges that Secretary Byrd and Attorney General Moody are conspiring to violate "U.S. Code § 611 [sic] by refusing to enforce the law" but fails to support this legal conclusion with any factual allegations.

To the extent that Plaintiff alleges that Defendants may have somehow conspired among themselves without alleging they did so intending to commit an underlying illegal act or tort, he fails to set forth a cognizable civil conspiracy claim. Florida law does not recognize an independent cause of action for civil conspiracy. "An action for civil conspiracy must be premised on an underlying tort or cause of action." *SMS Audio, LLC v. Belson*, No. 9:16-cv-81308, 2017 WL 1533941 (S.D. Fla. March 9, 2017), citing *Liappas v. Augoustis*, 47 S. 2d 582, 582 (Fla. 1950); *see also Yaralli v. Am. Reprographics Co.,* 165 So. 3d 785, 789 (Fla. 4th DCA 2015) (reversing summary

judgment on conspiracy count because "a cause of action for civil conspiracy requires an actionable underlying tort or wrong"); *U.S. ex rel Crenshaw v. Degayner*, 622 F. Supp. 2d 1258, 1284 (M.D. Fla. 2008) (holding defendants were entitled to summary judgment on civil conspiracy claim where plaintiff' failed to present sufficient evidence that [d]efendants are liable for an underlying tort or cause of action.").

### D.  Count 3

Count 3 alleges that Secretary Byrd, Director Matthews, and Attorney General Moody have negligently failed to enforce an August 14, 2012 Memorandum of Understanding between the State of Florida and the Department of Homeland Security, U.S. Citizenship and Immigration Services. The Memorandum of Understanding is not attached as an exhibit and the Second Amended Complaint contains no allegations describing the respective rights and obligations of the parties to that agreement. In short, the Second Amended Complaint contains no factual allegations explaining how the Memorandum of Understanding: 1) creates a legal duty on the part of Defendants Byrd, Matthews, and Moody; 2) how Byrd, Matthews, and Moody have breached that supposed legal duty; 3) how the breach of that supposed legal duty has injured Plaintiff; or 4) the damages sustained by Plaintiff. Consequently, the Second Amended Complaint does not plead a negligence action arising out of the August 14, 2012 Memorandum of Understanding.

Paragraphs 72 through 86 allege various computer issues supposedly occurring during the August 20, 2024 primary elections and statements allegedly made to the media concerning those issues by Defendants Byrd, Moody, and Link. Plaintiff alleges that "those comments are evidence of negligence," ECF 42 at ¶ 81, but offers no factual allegations showing how those computer glitches establish a legal duty on the part of any Defendant, a breach of any such duty, and resulting injury to Plaintiff. Plaintiff's mere legal conclusions and personal opinions do not give rise to a

presumption of truthfulness and fail to meet federal pleading standards set forth in *Twombly*, *Iqbal*, and *Coffie*.

Finally, Plaintiff alleges that 18 U.S.C. § 1015 imposes a common-law duty on Defendants Byrd, Moody, and Link to enforce those statutes, and that their alleged failure to do so has injured Plaintiff. ECF 42 at ¶ 179. Plaintiff offers no factual allegations to support this legal opinion or explain why this allegation would establish negligence on the part of any Defendant even if true.

### E.  Count 4

The allegations contained within Count 4 of the Second Amended Complaint (paragraphs 95-99, 104, and 183-189) contain no allegations of fact that support Plaintiff's threadbare legal conclusion that Defendants Link, Marino, Weiss, and Bradshaw have violated his rights under the First Amendment to the United States Constitution. Nor do the allegations of Count 4 make any mention of the Fourteenth Amendment to the Constitution, through which the First Amendment is applicable to the states. For that matter, the allegations of Count 4 do not even incorporate the general allegations of the Second Amended Complaint that identify the Plaintiff and Defendants Link, Marino, Weill, and Bradshaw. Consequently, the allegations of Count 4 are merely Plaintiff's legal conclusions and opinions that are not entitled to the presumption of truthfulness and cannot support a cause of action for the violation of Plaintiff's First Amendment Rights.

### F.  The Second Amended Complaint is in Substantial Part a Defective Petition for Writ of Mandamus

Cutting through the abundant extraneous allegations, legal opinions, and conspiracies strewn haphazardly throughout the Second Amended Complaint, it appears that Plaintiff in part seeks to compel Defendants to take certain action relating to Palm Beach County's voter rolls. See ECF 42 at 48, ¶ 1 (Plaintiff requests entry of "[a]n injunction requiring Defendants to fully comply with any existing procedures that Florida has in place to ensure ineligible voters are identified and removed

from the rolls"); *id.* at ¶ 5 (same), *id.* at ¶ 6 ("[a]n injunction requiring the Florida Defendants to use the same process used in jury selection to be used to verify citizenship of any person registering to vote"); *id.* at ¶ 7 ([a]n injunction requiring Defendants to use Federal statute that allows [Defendant Sartory] to request the DHS to verify citizenship and identities"); *id.* at ¶ 8 ("[a]n injunction requiring a registered voter to produce a photo ID when requesting a Vote by Mail ballot").

However, even if Plaintiff had properly petitioned for a writ of mandamus, which it has not, this Court would not have jurisdiction to grant that relief in this case. Pursuant to 28 U.S.C. § 1361, district courts possess "original jurisdiction of any action in the nature of mandamus *to compel an officer or employee of the United States or any agency thereof* to perform a duty  owed to the plaintiff." *Norton v. Berryhill*, No. 8:16-cv-2599-T-30AEP, 2019 WL 3254626 at *8 (M.D. Fla. June 26, 2019, citing to *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003). However, Plaintiff has named no "officers or employees of the United States or any agency thereof," as defendants in this case, and consequently this Court lacks jurisdiction to grant mandamus to compel these Defendants to act.

Even if this Court had jurisdiction to grant mandamus against these Defendants, and assuming that Plaintiff had requested that relief, mandamus would not be appropriate in this case. "[M]andamus provided an appropriate means of relief when: (1) the plaintiff possesses a clear right to the relief requested; (2) the defendant maintains a clear duty to act; and (3) no other adequate remedy is available to the plaintiff." *Id*. "Put another way, a writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Id.,* (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Because Plaintiff seeks to compel Defendants to take certain action, he seeks relief in the form of a petition for writ of mandamus, not an injunction intended to prevent Plaintiff from acting.

However, Plaintiff has not, and could not, establish that he has a clear legal right to compel the relief requested in the Second Amended Complaint or that Defendants have a clear, nondiscretionary duty to provide him that relief. For this reason as well the Second Amended Complaint fails to state a claim for which relief can be granted and must be dismissed pursuant to Rule 12(b)(6).

### III. This Court Lacks Subject Matter Jurisdiction Because The Second Amended Complaint Is Patently Insubstantial.

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the [plaintiff]." *Id.* Federal courts "are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536 (1974). "No federal question jurisdiction exists 'when the complaint is patently insubstantial.'" *Grady v. United States Dept. of Def.,* No. 16-14293, 2017 WL 35531 at *2 (S.D. Fla. Jan. 4, 2017), *aff'd sub nom Grady v. U.S. Gov't*, 702 F. Appx 929, 930-31 (11th Cir. 2017) (quoting *Best v. Kelly*, 39 F.3d 328 330 (D.C. Cir. 1994)).

"Patently insubstantial" claims are those that are "essentially fictitious" and "absolutely devoid of merit," including "bizarre conspiracy theories[.]" *Id.* at 330-31. (cleaned up); *see also Widtfeldt v. Int. Rev. Serv.*, 317 F. Supp. 3d 281, 283-84 (D.D.C. 2018) dismissing as patently insubstantial a complaint that made "vague and unsupported allegations of government-created epidemics, 'break-ins,' partisan conspiracies, and bribery"), aff'd, No. 18-5242, 2019 WL 479846 (D.C. Cir. Jan. 28, 2019); *Hu v. Dept. of Def.,* No. 13-5157, 2013 WL 6801189, at *1 (D.C. Cir. Dec. 11, 2013) (finding that district court properly dismissed complaint under Fed. R. Civ. P. 12(b)(1) where "it's factual allegations were 'essentially fictitious,' involving a fantastic scenario of a vast government conspiracy…"), cert. denied 135 S. Ct. 90 (Oct. 6, 2014); *Kaufman v. Int. Rev. Serv.,*

787 F. Supp 2d 27, 33 (D.D.C. 2011) (holding that court lacked subject matter jurisdiction over complaint alleging "a wide conspiracy between the IRS and Defendants (many of whom are judges, law enforcement or other government officials) [to] convert[] Plaintiff's sweat equity to private money by secretly issuing and trading bonds and similar private instruments hypothecated against Plaintiffs' future labor for enrichment of Defendants, thereby subjecting Plaintiffs to involuntary servitude" (cleaned up)).

In the instant case, Plaintiff alleges that "Defendants" have exploited "the loophole of allowing a person to become registered to vote without having a photo ID." ECF 42 at ¶ 50. Plaintiff alleges no facts whatsoever to support this conspiracy theory that Defendants are knowingly allowing non-citizens to register to vote. Further, "Plaintiff alleges a massive fraud conspiracy by Defendants (and others across Florida) to comingle large numbers of fraudulent ballots with the much smaller number of legitimate early vote ballots." ECF 42 at ¶ 75. Plaintiff can offer no factual allegations in support of this entirely fictitious statement, claiming that "[i]t is beyond the scope of this [Second Amended Complaint]." *Id.*

Plaintiff also alleges that Mi Familia Vota has conspired with former Defendants Mayorkas and O'Malley, as well as "illegal aliens," to register those non-citizens to vote in violation of 18 U.S.C. § 611. *Id.* at ¶ 152. Plaintiff claims to be aware of "proven examples of illegal aliens registering to vote" but fails to allege any facts that would allow Defendants or this Court to identify any of these "proven examples." *Id.* Defendants Byrd and Moody are alleged to be "conspiring to violate [18] U.S.C. § 611 by refusing to enforce the law." *Id.* at ¶ 154. Plaintiff also alleges that Defendants are conspiring to violate 18 U.S.C. § 241 (*Id.* at ¶¶ 155-156), 18 U.S.C. § 242 by depriving Plaintiff of rights guaranteed by the Constitution and laws of the United States (*Id.* at ¶ 157), 18 U.S.C. § 1015 (*Id.* at ¶¶ 158-159), and section 97.041, Florida Statutes (Id. at ¶ 160). Again,

Plaintiff makes no attempt to allege any facts that would support these baseless conspiracy theories. These allegations of "bizarre conspiracy theories" are "essentially fictitious" and "absolutely devoid of merit." Consequently, the Second Amended Complaint is patently insubstantial and must be dismissed pursuant to rule 12(b)(1) because this Court lacks subject matter jurisdiction.

### IV.     The Second Amended Complaint is an Impermissible Shotgun Pleading

The Federal Rules of Civil Procedure require that pleadings contain a "short and plain statement" of the claim showing that the pleader is entitled to relief, *see* Fed. R. Civ. P. 8(a)(2), and that they be stated in numbered paragraphs "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Complaints that violate either Rule 8(a)(2) or Rule 10(b) are commonly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

"Although the groupings cannot be too finely drawn, [the Eleventh Circuit] has identified four rough types or categories of shotgun pleadings. The most common type – by a long shot – is a complaint containing multiple counts where each count adopts the allegations of all proceeding counts…" *Id.* This is the pleading defect that led the Court to *sua sponte* dismiss the Amended Complaint as a shotgun pleading. *See* ECF 39. "The next most common type, at least as far as [the Eleventh Circuit's] published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not connected to any particular cause of action." *Weiland*, 792 F.3d at 1321-22. Another type of shotgun pleading "is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, *or which of the defendants the claim is brought against. Id*. at 1323 (emphasis added). The unifying characteristic of all types of shotgun pleadings is that they fail to

one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1322-23.

As previously noted, the Second Amended Complaint commits the "venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. *Id.* at 1322. For example, it comments upon Executive Order 14019 (ECF 42 at § 44), the Florida Department of State's Office of Election Crimes Report[3] (*id.* at ¶ 54), proclaims "Criminal Ballot Harvesting is Real – Hackers Leak 2.7 billion Data Records with Social Security Numbers" (*id.* at ¶ 60), and complains about a federal judge's ruling finding unconstitutional a Florida law which prohibited non-citizens from participating in voter registering activities (*id.* at ¶¶ 66-68).[4] Plaintiff further asserts that the participation of non-citizens in registering actual citizens to vote constitutes "election interference" (id. at ¶¶ 65-66), posits that it is "impossible to verify identities of many migrants (*id.* at ¶ 69), complains of "supervisor of elections website reporting glitches" and "cybersecurity concerns" (*id.* at ¶¶ 71-80), alleges the alteration of public records and a conspiracy to hide those altered record from the public (id. at ¶¶ 86-93), and comments on a United States Supreme Court ruling on an Arizona election law concerning proof of citizenship. *Id.* at ¶¶ 104-106.

Continuing on, again without sharing any supporting facts, Plaintiff opines that "[t]he people of Florida have been stonewalled at every level while redressing [their] grievances," *id.* at ¶107, asserts that the new Palm Beach Voting Tabulation Center "defies the will of the people," *id.* at ¶

---

[3] Plaintiff cites to the Office of Election Crimes Report to establish a single instance of an illegal alien, one Alfred Samuels, voting in Florida elections. Mr. Samuels allegedly registered to vote using a counterfeit birth certificate from New York City, not a social security number or alien registration number, which Plaintiff claims are the primary tools used by non-citizens to register to vote. ECF 42 at ¶ 43.
[4] The ruling, by District Judge Mark Walker, Chief Judge of the Northern District, in *Hispanic Federation, et al., v. Byrd*, case no. 4:23-cv-218-MW/MAF, ECF 149, did not invalidate any state or federal law which prevents non-citizens from voting.

110, and discusses Amendment 1 approved by Florida voters on November 3, 2020. *Id*. at ¶¶111, 112. Channeling Nostradamus, Plaintiff predicts that "federal laws will likely be violated in the upcoming November 2024 elections," i*d.* at ¶ 119, and states his belief as to how "Defendants obfuscate their crimes," *id*. at ¶ 120. Plaintiff asserts that former Defendants Mayorkas and O'Malley, whom he has voluntarily dismissed, "have likely conspired" to use social security and alien registration numbers to be used by non-citizens to register to vote and obtain mail-in ballots. *Id.* at ¶ 127.

Without asserting a factual basis, Plaintiff claims that "the volume of transactions recorded on the social security administration portal (HAFF) are [sic] highly suspicious" and that "[b]y design, the HAVV opens the doors for synthetic, unverifiable identities to be injected into our Social Security System and our voting rolls." *Id*. at ¶ 127. Plaintiff opines that "it is likely that this process, when leveraged with well-organized NGO's who act as the voter registration centers, will influence the 2024 General Election." *Id*. at ¶ 128. Plaintiff complains about what he asserts is the lack of a clear definition of ballot harvesting, *id.* at ¶ 129, and claims that "thousands of ballots can be sent to a fictitious address,"*id*. at ¶ 130. The Second Amended Complaint also contains captions in bold, underlined type that have no apparent relation to the adjacent paragraphs. For example, "**Proof of Large Increases in Voter Registration Only in Swing States"** appears on page 33 and **"Arizona's Maricopa County Refusal to Comply with the Law"** appears on page 35. Not only do these captions have nothing to do with the apparent claims being advanced by the Second Amended Complaint, but they also have no bearing on the many superfluous, conspiratorial allegations on those apparent claims.

The exhaustive compilation of the conclusory, vague, and immaterial allegations not connected to any particular cause of action detailed above conclusively demonstrates that the Second

Amended Complaint is a shotgun pleading that must be dismissed. See *Chudasama v. Mazda Motor Corp.*, 123, F.3d 1359 n. 9 (11th Cir. 1997) (finding a shotgun pleading where a "reader of the complaint must speculate as to which factual allegations pertain to which count"); *Cramer v. Florida*, 117 F.3d 1258, 1261 (11th Cir. 1997) (the complaint is "a rambling 'shotgun' pleading that it is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming"); *Pelletier v. Zweifel,* 921 F.2d 1465, 1518 (11th Cir. 1991) ("[Plaintiff's complaints] are quintessential shotgun pleadings, replete with factual allegations that could not possibly be material to any of the causes of action they assert.").

The Second Amended Complaint is also a shotgun pleading because it does not give Defendants adequate notice of which defendant is subject to which cause of action. Although Count 1 indicates that it is brought against all Defendants, Byrd, Matthews, and Link are the only Defendants named in any of the paragraphs contained in that count. Defendants Moody, Kerner, Weiss, Martino, Bradshaw, and Mi Familia Vota are not mentioned. Further, Count 2 impermissibly combines numerous causes of action against various Defendants. Plaintiff alleges separate conspiracies to violate 18 U.S.C. § 611 by Defendants Byrd and Moody, ECF 42 at ¶ 154, to conceal public records by Defendants Link, Weiss, and Marino, *id.* at ¶ 153, to violate 18 U.S.C. § 241 by Defendants Byrd, Matthews, Marino, Weiss, and Link, *id.* at ¶ 155, to violate 18 U.S.C. § 242, apparently by all Defendants, and to violate section 97.041, Florida Statutes, apparently by all Defendants. While Plaintiff has not again created the "mortal sin" of including all preceding counts into each succeeding count as it did in the Amended Complaint, ECF 17, Count II nonetheless combines numerous causes of action against different groups of Defendants. The Second Amended Complaint therefore remains a shotgun pleading.

## V.     The State Defendants are Entitled to Eleventh Amendment Immunity With Respect to Counts 2 and 3

The Eleventh Amendment to the Constitution of the United States directs that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Seminole Tribe of Florida v. Florida*, 517 U.S. 43, 54 (1996). The U.S. Supreme Court has consistently held that absent waiver of Eleventh Amendment immunity, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 662-63, (1974). (emphasis added). The immunity from suit in federal courts afforded states by the Eleventh Amendment applies equally to state officials acting in their official capacities. *Edelman*, 415 U.S. at 663. It is beyond dispute that Secretary Byrd, Director Matthews, and Attorney General Moody are officials of the State of Florida and are sued in their official capacity here. *See* ECF 1, pp. 2-4.

A narrow exception to this immunity is provided by *Ex parte Young*, 209 U.S. 123 (1908), which permits "suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *Summit Med. Assoc. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 274 (1997) ("[T]he Young doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights."). However, the *Ex parte Young* exception will apply only where the defendant state officials "at a minimum, have some connection with the enforcement of the provision at issue." *Claire v. Fla. Dept. of Mgmt. Serv.*, 504 F.Supp. 3d 1328. 1334 (N.D. Fla. 2020), (quoting *Socialist Workers Party v. Leahy,* 145 F.3d 1240, 1248 (11th Cir. 1998)). That is not the case here.

While Plaintiff purports to seek injunctive relief against all Defendants, including Secretary Byrd, Director Matthews, and Attorney General Moody with respect to deprivation of his civil rights in Count 1, that is not the case with Count 2, which alleges common law conspiracy, and Count 3,

which alleges negligence. Counts 2 and 3 assert common law tort claims and do not involve claims to vindicate Plaintiff's rights under the Constitution or federal law. *See Alyshah v. Georgia,* 239 Fed. Appx. 473, 473 (11th Cir. 2007) (Alyshah's…state tort claims were barred by both sovereign immunity and the Eleventh Amendment."); *Connor v. Halifax Hospital Med. Ctr.*, 135 F.Supp. 2d 1198, 1215 (M.D. Fla. 2001) (Florida's limited waiver of sovereign immunity for tort actions brought in its own courts does not waive Eleventh Amendment Immunity); § 768.28(18), Fla. Stat. (2023).

Nor does the Complaint contain any factual allegations that can be construed to establish or even imply that Defendants Byrd, Matthews, and Moody have waived their Eleventh Amendment immunity from suit in federal courts. The Second Amended Complaint therefore establishes on its face that Plaintiff's claims against Byrd, Matthews, and Moody in Counts 2 and 3 are barred by Eleventh Amendment Immunity and it must be dismissed.

## VI.     Plaintiff has Failed to Provide Notice Required by the NVRA

The National Voter Rights Act (NVRA), 52 U.S.C. §§ 20501-20511, provides a private cause of action for individuals aggrieved by a violation of that chapter. 52 U.S.C. § 20510(b). However, 52 U.S.C. § 20510(b) provides that:

> **(b) Private Right of Action**
>
> (1)     A person intending to bring a private cause of action "may provide written notice of the violation to the chief election officer of the State involved.
>
> (2)     If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred with 120 days before the date of an election for federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.
>
> (3)     If the violation occurred with 30 days before the date of an

election for Federal office, the aggrieved party need not provide notice to the chief election official of the state under paragraph (1) before bringing a civil action under paragraph (2).

In Florida, the Secretary of State is the chief elections officer within the meaning of the NVRA. *Bellitto v. Snipes*, 221 F.Supp. 3d 1354, 1361 (S.D. Fla. 2016); *see also* § 97.012, Fla. Stat. ("The Secretary of State is the chief election officer of the state"). If the Second Amended Complaint is clear about anything, it is that the alleged violations of NVRA of which Plaintiff complains occurred well outside of 30 days before the November 5, 2024 election, which includes elections for federal offices. *See* ECF 42 at ¶¶ 35-70. The Second Amended Complaint contains no allegation that Plaintiff provided the notice required by 52 U.S.C. § 20510(b)(2) to Secretary Byrd, or even that all conditions precedent have been performed or waived. Because Plaintiff has failed to establish that he provided the notice mandated by the NVRA before initiating his private action against Defendants, the Second Amended Complaint must be dismissed.

## VII.    Plaintiff Cannot Civilly Enforce Federal Criminal Statutes

As previously discussed, Count 2 of the Second Amended Complaint alleges that different groups of Defendants have violated numerous federal criminal statutes. However, federal criminal statutes proscribing conspiracies against civil rights "do not provide a civil cause of action or any civil remedies." *Grappell v. Carvalho*, 847 Fed. Appx. 698, 701 (11th Cir. 2021); *see also Austin v. Global Connection*, 303 Fed. Appx. 750, 752 (11th Cir. 2008) ("The federal wire and mail fraud statutes are criminal statutes which do not provide for civil remedies."); *Freeman v. Fine*, No. 3:18-cv-409-MCR-CJK, 2018 WL 6594593 (N.D. Fla. Nov. 6, 2018) ("Plaintiff says defendant allegedly violated 18 U.S.C. §§ 2, 3, 4, 1017, 1018, 1031, 1037, 241, 371, 1343, 1346, 1349, 1505, 1513, 1519, and 1623. These criminal statutes, however, do not provide plaintiff with a civil remedy."). Further, Plaintiff's allegations that Defendants have engaged in a civil conspiracy are nothing more

than "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts," *Davila,* 326 F.3d at 1185, and do not state a cause of action.

**VIII.   This Court Lacks Personal Jurisdiction over Defendant Mi Familia Vota[5]**

"Whether a federal court has personal jurisdiction over a defendant is a question of law." *Ash v. Royal Caribbean Cruises Ltd.,* 991 F.Supp.2d 1214, 1216 (S.D. Fla. 2013). "A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A*., 119 F.3d 935, 940 (11th Cir. 1997).

Defendant Mi Familia Vota is a 501(c)(4) non-profit incorporated in the state of Texas. *See* Affidavit, attached at Exhibit A. It does not have an office in Florida, it does not have any employees in Florida, and it does not engage in any grassroot activities in Florida. See id. To determine whether Defendant is subject to personal jurisdiction in Florida, the court must determine (1) whether the state long arm statute permits assertion of jurisdiction, (2) whether minimum contacts exist to satisfy the due process requirements of the Fourteenth Amendment; and (3) whether the maintenance of the suit would offend traditional notions of fair play and substantial justice. *See DiMaggio, LLC v. City, Cnty. of San Fransisco,* 187 F.Supp.2d 1359, 1364 (S.D. Fla. 2000).

a. **Florida's Long Arm Statute Does Not Permit Assertion of Jurisdiction.**

Florida's Long-Arm Statute identifies nine specific acts "subjecting person[s] to jurisdiction of [the] courts of [this] state." Fla. Stat. §48.193(1)(a)(1)-(9). Notably, many of the acts lack even tangential relevance to the legally deficient allegations in Plaintiff's Second Amended Complaint. Plaintiff's failure to specify which act (purportedly) subjects Defendant to personal jurisdiction in Florida necessitates dismissal of Plaintiff's Second Amended Complaint. *See, e.g., Stubbs v.*

---

[5] Defendants Byrd, Matthews, Moody, and Kerner do not join in Mi Familia Vota's arguments in this section.

*Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3 1357, 1360 (11th Cir. 2006)("Stubbs, as the plaintiff, has the burden of establishing a prima facie case of personal jurisdiction.").

While section 48.193(1)(a)(1), Florida Statutes, permits a court to exercise personal jurisdiction over non-residents that operate, conduct, engage in, or carry on business in Florida of that have an office in Florida, Defendant does not engage in grassroot activities in Florida, nor does it have an office in the state of Florida. *See* Exhibit A. Furthermore, Plaintiff does not allege that Defendant breached a contract that required performance in Florida, that Defendant was engaged in solicitation in Florida, or that products, materials, or things processed, serviced, or manufactured by Defendant were used or consumed in Florida in the ordinary course of commerce or trade. *See* Fla. Stat. §48.193(1)(a)(6) and (7).

Plaintiff's failure to establish personal jurisdiction over Defendant under Florida's long arm statute mandates dismissal of his Second Amended Complaint against Defendant. *See Republic of Panama*, 119 F.3d at 940 ("A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings.").

> **b. Minimum Contacts Do Not Exist and Maintenance of the Suit Does Offend Traditional Notions of Fair Play and Substantial Justice**

To constitute "minimum contacts" for purposes of personal jurisdiction, a defendant's contacts with Florida must be related to plaintiff's allegations and involve some act by which the defendant purposefully availed itself of the privilege of conducting activities in Florida such that it should reasonably anticipate being subject to jurisdiction in Florida. *See, e.g., Walack v. Worldwide Machinery Sales, Inc*., 278 F.Supp.2d 1358, 1367-68 (M.D. Fla. 2003). In this instance, Plaintiff cannot meet his burden.

As stated above, Defendant is a 501(c)(4) non-profit incorporated in the state of Texas with no activities in Florida. Defendant does not have an office in Florida, it does not have any employees

in Florida, and it does not engage in any grassroot activities in Florida.  See Exhibit A. Even if

Defendant had "[r]andom, attenuated, or fortuitous contact" with the state of Florida (which it does

not), such contacts would be insufficient to satisfy the minimum contacts required for personal

jurisdiction.  *See Walack*, 278 F. Supp.2d at 1368 (citing *Sun Bank, N.A. v. E.F. Hutton & Co. Inc.,*

926 F.2d 1030, 1034 (11th Cir. 1991)).

Plaintiff's failure to meet his burden under federal law mandates dismissal of Defendant from

this suit. *See, e.g., Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1221 (11th Cir. 1999)(affirming

the district court's dismissal of claims "for which it lacked personal jurisdiction ….").

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court enter an Order

Dismissing the Second Amended Complaint.

Respectfully submitted this 3rd day of October 2024.

ASHLEY MOODY
FLORIDA ATTORNEY GENERAL

*/s/ Timothy L. Newhall*
TIMOTHY L. NEWHALL
Senior Assistant Attorney General
Florida Bar No. 391255
Timothy.Newhall@myfloridalegal.com
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL  32399-1050
Phone: (850) 414-3300
Fax: (850) 414-9650
*Counsel for James Cord Byrd, Secretary of State*
*for Florida, Maria Matthews, Director of of the*
*Division of Elections, Ashley Moody, Attorney*
*General of the State of Florida, and Dave Kerner,*
*Executive Director of the Florida Department of*
*Highway Safety and Motor Vehicles.*

*/s/ Jeremy F. Goldstein*

JEREMY F. GOLDSTEIN
Florida Bar No.: 1022687
BARRY A. POSTMAN
Florida Bar No." 991856
COLE, SCOTT & KISSANE, P.A.
Counsel for Defendant Mi Familia Vota
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401
Telephone: (561) 383-9225
Facsimile: (561) 683-8977
Primary e-mail: barry.postman@csklegal.com
Primary e-mail: jeremy.goldstein@csklegal.com
Secondary e-mail: sara.ghent@csklegal.com
Secondary e-mail:
Daniel.DellaRocca@csklegal.com


 */s/ Thomas E. Jablonski*
Thomas E. Jablonski, Esquire
Assistant County Attorney
Florida Bar No. 121866
Counsel for Defendants Greg Weiss and Maria
Marino
300 North Dixie Highway, Suite 359
West Palm Beach, FL 3340
Tel.: 561-355-2225
Email: TJablonski@pbc.gov


*/s/ James O. Williams, Jr., Esq.*
James O. Williams, Jr., Esq.
Florida Bar No. 614513
Service to: eservice@wlclaw.com
Attorney for Defendant Palm Beach
County Sheriff's Office
Williams, Leininger & Cosby, P.A.
11300 US Highway One, Suite 300
North Palm Beach, FL 33408
Telephone: 561-615-5666
Facsimile: 561-615-9606


JECK, HARRIS, RAYNOR & JONES, P.A.

26

*Counsel for Wendy Sartory Link,*
*Supervisor of Elections for*
*Palm Beach County, Florida*
790 Juno Ocean Walk, Suite 600
Juno Beach, Florida 33408
Telephone: (561) 746-1002
Facsimile: (561) 775-0270

*By: /s/ David K. Markarian*
David K. Markarian
Florida Bar No. 480691
dmarkarian@jhrjpa.com
David R. Glickman
Florida Bar No. 118685
dglickman@jhrjpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which provides notice to all parties, and sent by email to Plaintiff Jeff Buongiorno at Jeff@etektraining.com on this 3rd day of October 2024.

*/s/ Timothy L. Newhall*
Timothy L. Newhall