**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:24-CV-80920-AMC**
**HONORABLE AILEEN CANNON**

**JEFFREY BUONGIORNO**,

    Plaintiff,

      v.

**JAMES CORD BYRD**, in his official capacity as
the Secretary of State of Florida;
**ASHLEY MOODY**, in her official capacity as the
Florida Attorney General; **MARIA MATTHEWS**,
in her official capacity as the Director of Division
of Elections (a division within the Florida
Department of State); **MARIA MARINO**, in her
official capacity as the Palm Beach County, Florida
Commissioner for District 1; **GREG WEISS**, in his
official capacity as the Palm Beach County, Florida
Commissioner for District 2; **WENDY SARTORY
LINK**, in her official capacity as Palm Beach
County Supervisor of Elections; **MI FAMILIA
VOTA**, a non-profit business entity; **RIC
BRADSHAW**, in his official capacity as the Palm
Beach County, Florida Sheriff; **DAVE KERNER**,
in his official capacity as the Chief Administrator of
the Florida. Department of Highway Safety and
Motor Vehicles.

    Defendants.

_____/

**DEFENDANTS' COMBINED RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER**

    COME NOW, all above-named Defendants, by and through undersigned counsel, pursuant

to Fed. R. Civ. P. 7(b) and S.D. Fla. L.R. 7.1(c), and hereby file this Combined Response in

Opposition ("Response") to Plaintiff's Amended Motion for Temporary Restraining Order

("Plaintiff's Amended Motion").[1] Defendants Byrd, Matthews, Moody, and Kerner (the "State Defendants") join in this response only as to paragraphs one (1) through three (3) below, because the remainder does not apply to the State Defendants, they take no position or make any argument regarding the remainder of this response. In support thereof, Defendants state as follows:

### INTRODUCTION

1.      The Court should deny Plaintiff's Amended Motion because the Court lacks subject matter jurisdiction, as Plaintiff lacks standing, and his claims are not ripe. In addition, Plaintiff's Amended Motion woefully fails to meet the required standard under *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) and its progeny. Plaintiff's Amended Motion merely asserts conclusory statements without supporting ultimate fact or authority. It fails to articulate any valid basis for (1) alleged success on the merits; (2) alleged irreparable harm; (3) balancing of equities in favor of Plaintiff; or (4) public interest. Finally, Defendant Mi Familia Vota is not subject to the Court's personal jurisdiction. As such, the Defendants respectfully request that the Court deny Plaintiff's Amended Motion for the reasons stated herein.

2.      Defendants assert that Plaintiff's Amended Motion is directed mainly at WENDY SARTORY LINK, in her official capacity as Palm Beach County Supervisor of Elections (the "Supervisor"), RIC BRADSHAW, in his official capacity as Palm Beach County Sheriff (the "Sheriff"), and GREGG WEISS and MARIA MARINO, in their official capacities as Palm Beach County Commissioners (the "Commissioners") (collectively, the "Palm Beach County Defendants"). Plaintiff's Amended Motion discusses only Count four (4) (Violation of the First Amendment) of the Second Amended Complaint, dated September 3, 2024 (the "Amended

---

[1] This combined Response does not address Plaintiff's newly filed Amended Motions for TRO and Injunctive Relief filed on October 1, 2024 [ECF No. 59], and October 2, 2023 [ECF No. 60]. Defendants hereby reserve the right to separately respond to ECF No. 59 and ECF No. 60, under applicable law, local rule, and Court Order.

Complaint"), which is asserted against only the Palm Beach County Defendants. To the extent the Court construes Plaintiff's Amended Motion to apply to the remaining Defendants, with the exception of Defendants Byrd, Matthews, Moody, and Kerner, those Defendants adopt the arguments asserted herein as their own.

3.     Because the allegations of the Second Amended Complaint concerning the alleged violation of Plaintiff's First Amendment rights are not directed at the State Defendants, (1) Plaintiff has no likelihood of success on the merits of his First Amended Claim against them; (2) no irreparable harm will occur to Plaintiff if a TRO is not entered against the State Defendants; (3) the balance of the equities or hardships is not in favor of Plaintiff; and (4) the entry of a TRO against the State Defendants would not be in the public interest. Should the Court determine that the allegations of Count four (4) of the Second Amended Complaint are directed at the State Defendants, the State Defendants request leave of Court to submit supplemental briefing on the issue.

## **BACKGROUND**

4.     Plaintiff filed this lawsuit against numerous Defendants, including state and county government officials. Plaintiff has alleged violations of federal and state law, constitutional violations, and claims of negligence. The gist of Plaintiff's claims is that Defendants conspired to subvert the upcoming November 2024 election by permitting illegal voting. Plaintiff seeks only injunctive and declaratory relief.

5.     The basis for Plaintiff's Amended Motion relates to two (2) incidents in which Plaintiff claims his free speech was stifled at Palm Beach County Canvassing Board (the "Canvassing Board") meetings. The Canvassing Board is a separate legal entity, independent of

the office of the Supervisor.[2] The Commissioners and local judges voluntarily serve as members of the Canvassing Board without compensation, working long hours to perform solemn duties.[3] The Canvassing Board serves to canvas elections, which includes but is not limited to oversight of the logic and accuracy testing of vote tabulating equipment, certification of the equipment's accuracy, determination of voter intent, certification of elections, oversight and certification of audits and recounts, review of vote-by-mail ballots, and verification of voter's signatures on voter certificates. While the Supervisor normally serves on the Canvassing Board, she is not a member of the Canvassing Board for the 2024 General Election, because she appears on the ballot as a candidate for re-election. *See* Fla. Stat. § 102.141(1).[4]  Therefore, Plaintiff's conflation of the Supervisor and the Canvassing Board, and seeking to enjoin their future actions is misguided and incapable of being 'redressed' by this Court.

6.     The public is welcome to attend Canvassing Board meetings and witness their deliberations, which are held in the "sunshine" to allow the public to observe the canvassing process as well as offer public comment on non-ministerial and non-quasi-judicial activities and decisions of the Canvassing Board.[5]  Every election-related issue is considered and determined in full view of the public, including questioned ballots or signatures, which are electronically displayed on multiple monitors for the public during Canvassing Board meetings. Plaintiff claims that on August 9, 2024, he was wrongfully removed from a Canvassing Board meeting by the Supervisor specifically and was subsequently denied entry to the next meeting on August 14, 2024. As discussed more fully at paragraph twenty-five (25), Plaintiff was removed from the meeting of

---

[2] The Supervisor was appointed by Governor DeSantis in 2019, to transform the office of the Palm Beach County Supervisor of Elections and implement state-of-the art technologies assuring fair and transparent elections.
[3] *See Exhibit "A" at ¶ 4.*
[4] *Id.* at ¶ 5.
[5] *Id.* at ¶ 6.

the Canvassing Board on August 9, 2024, and barred from the August 14, 2024 meeting at the direction of the Chair of the Canvassing Board, County Court Judge April Bristow, due to serial misconduct by Plaintiff following three (3) prior warnings by Judge Bristow.

7.      At least as it relates to the Supervisor, the instant action appears to be a largely political attack against a competing candidate for public office. Plaintiff's Second Amended Complaint specifically admits that he is the Republican candidate for Palm Beach County Supervisor of Elections. [ECF No. 42] at ¶ 17. Plaintiff's Second Amended Complaint also makes numerous references to his possible loss of the upcoming election for Supervisor of Elections as part of his claim for damages. *See, e.g.,* [ECF No. 42] at ¶¶ 142, 167, 180.

8.      Even apart from the improper political nature of this action, Plaintiff's Amended Motion must be denied because the Court lacks subject matter jurisdiction, as Plaintiff lacks standing, and his claims are not ripe.

9.      Additionally, Plaintiff fails to meet his burden of proof under any element in *Winter*, as Plaintiff presents mere allegations in unverified pleadings with no supportive affidavit or otherwise admissible evidence.[6]

## **ARGUMENT**

### I.    **Legal Standard.**

10.     The United States Supreme Court set an extremely high burden of proof for a plaintiff seeking an injunction or TRO. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 US 7 (2008); *see also Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001) (the standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the

---

[6] *McMinn v. ATP Flight Acad., LLC*, 2024 WL 4201617 (M.D. Fla. 2024).

merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. *Winter* holds that a "preliminary injunction is an extraordinary remedy never awarded as of right" and that "…courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24. *See also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites."). Here, Plaintiff fails to meet each of the four components, as discussed below.

## II.     Failure to Comply with Fed. R. Civ. P. 65.

11.     As an initial matter, Plaintiff conflates two (2) separate remedies provided for under Fed. R. Civ. P. 65: injunction and restraining order. Plaintiff's Amended Motion by its title seeks a temporary restraining order, but its first paragraph refers to Fed. R. Civ. P. 65(a), which governs injunctions. [ECF. No. 48] at ¶ 1. Moreover, Plaintiff's requests for relief on page six (6) of his Amended Motion appear to request aspects of both an injunction and a restraining order.

12.     Further, Fed. R. Civ. P. 65(c) requires that the movant give security in an amount set by the Court before the Court may issue a preliminary injunction or restraining order. Plaintiff's Amended Motion on its face fails to offer any such security as required.

13.     As such, Plaintiff's Amended Motion fails to comply with Rule 65 and should be denied for these reasons alone.

## III.    Plaintiff Fails to Demonstrate Likelihood of Success on the Merits Because Plaintiff Lacks Standing and His Claims Are Not Ripe.

14.     Beyond its failure to comply with Rule 65, Plaintiff's Amended Motion fails to establish any likelihood of success on the merits of his underlying action, as required under *Winter*.

15.     The Court lacks jurisdiction to issue a preliminary injunction because Plaintiff lacks standing due to absence of any imminent injury-in-fact. Article III of the United States Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. CONST. art. 3, § 2. The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement," and defines the boundaries of jurisdiction under Article III by "identifying those disputes which are appropriately resolved through the judicial process." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Thus, as a threshold matter, federal courts are "under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines" that a plaintiff must satisfy. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotations and citation omitted).

16.     As to standing, federal courts are to consider whether the plaintiff has alleged "an 'injury in fact' that is 'fairly traceable to the challenged action of the defendant' and is capable of being 'redressed' by the court." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020; *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016). And the plaintiff bears the burden of establishing the presence of all three elements. *Id.* To establish "injury-in-fact," the plaintiff must show he suffered a concrete injury that is "actual or imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan*, 504 U.S. at 560. Moreover, the injury alleged must be particularized to the plaintiff—"not a generalized grievance"—as Plaintiff describes in his Amended Motion. *Allen v. Wright*, 468 U.S. 737, 751 (1984).

17.     Here, Plaintiff fails to allege an injury-in-fact fairly traceable to the challenged actions of the Defendants. As an example, although Plaintiff alleges that the Supervisor, along with certain other Defendants, failed to make reasonable efforts to conduct voter list maintenance

in accordance with The National Voter Registration Act ("NVRA") (52 U.S.C. § 20507(a)(4)), such claims are unfounded. The Supervisor acts in accordance with the procedures set forth in Chapter 98, Florida Statutes, and any applicable rules issued by the Secretary of State, Division of Elections (the "Department").

18.     Section 98.035, Florida Statutes, explicitly states that the Secretary of State, as the chief election officer of the state, shall be responsible for implementing, operating, and maintaining a single, uniform, official, centralized, interactive, computerized statewide voter registration system, in accordance with the Help America Vote Act of 2002. *See* Fla. Stat. § 98.035. This section of the statute further empowers the Department to adopt rules governing the access, use, and operation of the statewide voter registration system to ensure its security, uniformity, and integrity. *Id.*; *see also* Fla. Stat. § 97.012. Moreover, Section 98.075(1), Florida Statutes, expressly provides that the Department shall protect the integrity of the electoral process by maintaining accurate and current voter registration records and may adopt uniform procedures to ensure statewide compliance with the Florida Election Code, the Voting Rights Act of 1965, the NVRA, and the Help America Vote Act of 2002. *See* Fla. Stat. § 98.075.

19.     In accordance with the law, the Department, through its rules, directs what procedures the Supervisor must follow in order to maintain the voter registration system.  The rules dictate that the Supervisor shall conduct appropriate action pursuant to Section 98.075(7), Florida Statutes, which sets forth the specific process the Supervisor must follow that includes notifying the voter, providing the individual with an opportunity for a hearing, and ultimately removing the voter if they are determined to be ineligible. The Department has access to critical information from various federal and state agencies that the Supervisor does not have access to. Thus, contrary to the Plaintiff's allegations which imply otherwise, the Supervisor acts in

accordance with applicable law once the Department or another governmental entity—such as the Department of Health, Department of Highway Safety and Motor Vehicles, or the U.S. Social Security Administration—identifies a voter as potentially ineligible and informs the Supervisor. *See* Fla. Stat. § 98.075(7); *see also* Fla. Stat. § 98.093. The Supervisor is not authorized to remove individuals from registration rolls except in accordance with Chapter 98, Florida Statutes, and the Rules promulgated by the Department. [7] The Supervisor complied with the Department's Rules and other applicable law regarding maintenance of the voter registration system.[8]

20.     Given this framework, the Plaintiff's sweeping and conclusory allegations that the Supervisor failed to sufficiently conduct voter list maintenance, do not establish nor allege that the Supervisor neglected to take specific action as required under Chapter 98, Florida Statutes, and other applicable laws. In fact, the Supervisor intends to present evidence from which the Court will be satisfied that the Supervisor fully complied with the Department's requirements and applicable law regarding maintenance of the voter registration system.

21.     Moreover, the primary responsibility for overseeing and maintaining the statewide voter registration system rests with the Department, as it is the Department that ultimately approves and manages the uniform voter registration system, including the form of the voter registration application. Although voters can register via the Supervisor's website, this platform merely directs them to the Department's approved application. Voters can also obtain Florida Voter Registration Applications from various other locations and sources. The Department ensures a uniform and nondiscriminatory statewide voter registration system. As such, Plaintiff has failed to substantiate his claims that the Supervisor's actions fell short of legal requirements or that the Supervisor failed to act in accordance with the law, and therefore his request for injunctive relief should be denied.

---

[7] *See* Affidavit of Alison Novoa, attached hereto as *Exhibit "A" at ¶ 3.*
[8] *Id.*

22.     While Section 286.0114, Florida Statutes, grants the public the ability to attend Canvassing Board meetings, witness them, and offer public comment regarding non-ministerial and non-quasi-judicial activities and decisions of the Canvassing Board, the Government in the Sunshine Manual issued by the Office of the Attorney General (the "Sunshine Manual") provides that State's Canvassing Boards may create and enforce rules to govern these meetings in order to maintain orderly conduct or proper decorum. Additionally, Florida law and its Constitution protect the signatures of voters, and the release of any information about votes cast. *See* Fla. Stat. § 97.0585(1)(d)(2) (providing that the signature of a voter registration applicant or a voter is confidential and exempt from the copying requirement of Section 119.07(1), Florida Statutes, and Section 24(a), Art. I of the State Constitution); *see also* Fla. Stat. § 101.572(2) (setting forth that an individual granted reasonable access upon request to review or inspect ballot materials before canvassing or tabulation may not make any copy of a signature); *see also* Fla. Stat. § 101.5614(8) ("[a] person authorized to observe, review, or inspect ballot materials or observe canvassing who releases any information about votes cast for or against any candidate or ballot measure or any results of any election before the closing of the polls in that county on election day commits a felony of the third degree").

23.     Pointedly, the meeting minutes of the pre-election Canvassing Board meeting held on July 1, 2024, for the 2024 Primary Election, reflect that during the meeting, the rules of the canvassing room and standards of conduct were announced to include:

- Photography and video recordings of any ballots and signatures are not permitted at any time during the election process to include the canvassing room or during duplication.
- Standards of Conduct
    - All parties are to act with decorum and respect.
    - The public may observe the canvassing process; however, the Canvassing Board is not required to take questions or engage in any discussions with the public.

       o      There will be no discussion during the canvassing process …
*Any person causing a disruption or breaking the rules of the
proceedings will be asked to leave and will be permanently barred for
the duration of the election cycle (through the General Election).*

*See Exhibit "B"* (emphasis added).[9]

24.     At a point in time during the Canvassing Board meeting of August 9, 2024, when

Plaintiff was *not* offering public comment regarding the activities and decisions of the Canvassing

Board, his continuous outbursts and ongoing conduct was deemed to be disruptive and

inappropriate[10] by the Chair of the Canvassing Board, County Court Judge April Bristow.[11] Judge

Bristow offered Plaintiff three (3) prior warnings regarding his misconduct, which went unheeded,

and in accordance with the aforementioned rules of conduct, Judge Bristow ultimately ordered

Plaintiff removed from the meeting.[12] The Sheriff's Deputy, providing security for the meeting,

merely followed Judge Bristow's instructions and directions, in her capacity as Chair of the

Canvassing Board.

25.     Making matters worse, Plaintiff's encounter with law enforcement authorities was

filmed, and Plaintiff shared it on his X account[13] and tied it to the Supervisor's office by tagging

the Supervisor's official X account, as partially depicted on page twenty-three (23), paragraph

---

[9] As reflected by the Canvassing Meeting Agendas from August 9, 2024, and August 14, 2024, the foregoing rules of conduct were also subsequently verbally reviewed for the public during each meeting.

[10] Further, Plaintiff alleges that he was removed from the August 9th Canvassing Boad meeting because he opposed the Canvassing Boards adoption of Rule 1S-2.027 and an alleged relation of that Rule to "Blank Ballots." These accusations are patently false. Rule 1S-2.027 is a rule that was updated by the Department with an effective date of August 8, 2024. It was not within the Board's purview to adopt this statewide Rule. The Canvassing Board's discussion of that rule, and its corresponding form, was on the Canvassing Board's agenda for discussion about the current revisions and how those would affect the Board's voter intent determinations. Plaintiff's removal was in no way related to Plaintiff's claimed desire to comment on the Board's action. Members of the public who were present during the public comment period were provided an opportunity to make comments on the Board's possible actions related to this revised rule, but Plaintiff did not avail himself of the opportunity to engage in public comment, because he arrived late to the meeting.

[11] *Exhibit "A"* at ¶¶ 8-9.

[12] Judge Bristow did not know who Plaintiff was, nor that he was a candidate for the Supervisor of Elections of Palm Beach County.

[13] Formerly known as "Twitter."

ninety-five (95) of Plaintiff's Amended Complaint. Plaintiff's sharing on X of the encounter with law enforcement also revealed the signatures that were then being publicly displayed upon the Canvassing Board's large overhead "big screen" monitors, in serious violation of applicable law.

26.     Section 97.0585(1)(d)(2), Florida Statutes, provides that the signature of a voter registration applicant or a voter is confidential, and Section 101.572(2), Florida Statutes, provides that anyone granted access to review or inspect ballot materials may not make any copy of a signature. This violation of the Florida Election Code is a crime punishable as set forth in Section 104.41, Florida Statutes[14]. Any user searching for the Supervisor's X account could have seen the Plaintiff's shared post, obligating the Supervisor to block Plaintiff from the Supervisor's official X account as the least restrictive means of preventing the illegal exposure of voter signatures from being associated with the Supervisor's account.

27.     Moreover, Plaintiff was denied entry to the following Canvassing Board meeting held on August 14, 2024, in accordance with the rules of conduct of the Canvassing Board, which as described herein, specify that "*[a]ny person causing a disruption or breaking the rules of the proceedings [would] be permanently barred for the duration of the election cycle (through the General Election).*" *See Exhibit "B."* (emphasis added).

28.     Additionally, as to Plaintiff's contention that website outages hindered public access to Florida's primary election results on August 20, 2024, the Supervisor fully complied with the law by uploading the real time election results to the Florida Secretary of State's website, on time and as required, fulfilling her statutory obligations as mandated by Sections 102.141 and 102.151, Florida Statutes. The Supervisor successfully began uploading the election results within

---

[14] Plaintiff's violation of the law was knowing and purposeful, as these rules and restrictions were posted prominently throughout the Canvassing Board's meeting room, above and adjacent to the Canvassing Board's large, big screen monitors.

thirty (30 minutes) of the polls closing on election night, and every forty-five (45) minutes thereafter, which fully complied with all legal reporting requirements to the Department. Only a secondary, ancillary mechanism to report election results was provided through a website hosted by "VR System." That website did experience difficulties due to a recently implemented security procedure by VR Systems, the vendor (not a cyber event or a breach), which was promptly addressed. In addition to the website hosted by VR System, and the timely and lawful reporting of election results to Florida's Secretary of State, the Supervisor also provided redundant reporting of the primary election results through local television Channel 20, and a third website. Moreover, for those members of the public attending the Canvassing Board meetings at the Supervisor's facility, hard copies of the election results were printed and provided to the public in real time, as election results were tabulated and uploaded to the Department throughout the evening.  There was no compromise of the public's awareness of the election results in real time on August 20, 2024.

29.      Plaintiff also alleges, without evidence, that these circumstances constituted an "outage," causing the disappearance of mail-in ballots.  The Supervisor is prepared to establish that no outage occurred, and no mail-in ballots disappeared.

30.      Other allegations involving VR Systems are equally without merit. Plaintiff's claims that VR Systems administers Florida's voter rolls or that it issued 191,000 mail-in ballots are entirely false.  VR Systems does not administer voter rolls and does not issue mail-in ballots.

31.      Additionally, the claims made regarding "alteration" of an EL- 45A report (see Plaintiff's Amended Complaint at paragraph ninety-two (92)) do not withstand scrutiny.  The Supervisor is prepared to establish that the EL-45A report produced on May 1, 2023, is identical to the version of the EL-45A report produced subsequently, with one (1) exception.  The EL-45A report produced on May 1, 2023, contained an erroneous date and an errant hashmark, which

investigation revealed was caused by a battery failure in the computer used to generate the report. Once the proper date was established on the EL-45A report, the same exact identical report was disseminated.

32.     Plaintiff's alleged injury is therefore not capable of being redressed by the Court because Plaintiff's request takes the form of an improper advisory opinion or writ of mandamus. Issuing an injunction in this case where the Plaintiff was not harmed by actual or threatened injury would ultimately amount to "an advisory opinion without the possibility of any judicial relief." *See California v. Texas*, 593 U.S. 659, 673 (2021). As in *California*, it "would threaten to grant a general authority to conduct oversight of decisions of the elected branches of Government. Article II guards against federal courts assuming this kind of jurisdiction." *Id*; *see also Carney v. Adams*, 141 S. Ct. 493, 498 (2020) ("Article II requires that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions"). Here, Plaintiff admittedly requests an advisory opinion under the guise of injunctive relief: "The injunctive relief asks for nothing more than Defendants to stop violating the U.S. Constitution and other laws." [ECF No. 48] at ¶ 6. Similarly, Plaintiff's claim is not ripe. Ripeness also relates to Article III limitations on federal court jurisdiction. But ripeness is temporal, and aims to avoid federal courts making premature adjudication. *See Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967). A plaintiff must allege more than some future acts or events that "may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F. 3d 272, 284 (6th Cir. 1997). Here, Plaintiff only articulates potential future events that may not occur as he expects or may not occur at all. He instead seeks to prevent alleged irreparable harm that would occur "if Plaintiff suffers future violations of his First Amendment rights." [ECF No. 48] at ¶ 2 (emphasis added). Plaintiff does not know that his First Amendment rights will be violated in the future, and even if they were,

he cannot predict how or the effect of same. This case is not ripe for the Court to properly adjudicate Plaintiff's claims.

33.     Plaintiff devotes only a single, conclusory paragraph to the issue of likelihood of success on the merits. [ECF No. 48] at ¶ 4. The single paragraph contains no ultimate fact, legal argument evidence, or legal authority whatsoever as the basis for his conclusory statement that "the Amended Complaint has a strong likelihood of succeeding on the merits…" [ECF No. 48] at ¶ 4.

34.     Plaintiff also mistakenly refers to a stale Amended Complaint, since he filed the Second Amended Complaint days prior to filing the Amended Motion. Plaintiff's reference to inadmissible videos within the Amended and Second Amended Complaints are not evidence on which the Court could base a finding of likelihood of success on the merits.

35.     Plaintiff fails entirely to address the elements of his *prima facie* case of the causes of action underlying his request for preliminary injunction. He simply provides no evidence or argument at all from which the Court can make any finding of likelihood of success on the merits. Those claims also fail to state a cause of action on the face of the Second Amended Complaint.

36.     Finally, the relief sought seeks a type of improper writ of mandamus via injunctive relief. Mandamus is an extraordinary remedy, which should only be used in exceptional circumstances of peculiar emergency or public importance. *LaBuy v. Howes Leather Co.*, 352 U.S. 249 (1957); *United States v. McGarr*, 461 F.2d 1 (7th Cir. 1972). Here, neither exist. Mandamus is the proper remedy to order a government official to properly fulfill official duties or correct an abuse of discretion. Here, that is the extent of the relief requested by Plaintiff, however Plaintiff fails to request a writ of mandamus or to comply with the proper procedure or substance for seeking one, and fails entirely to incorporate, rely on, or satisfy 28 U.S.C. § 1361 and related law.

37.     Due to the issues above, the Court has no subject matter jurisdiction and Plaintiff cannot demonstrate any likelihood of success on the merits. The absence of any likelihood of success on the merits, standing alone, requires denial of Plaintiff's Amended Motion.

**IV.     Plaintiff Has Not Demonstrated Irreparable Harm.**

38.     Plaintiff must next establish that irreparable harm is <u>likely</u> if the Court does not grant the preliminary injunction/TRO. As the Eleventh Circuit has recognized, "[a] showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel*, 234 F.3d at 1176 (internal quotations omitted). The injury "must be neither remote nor speculative, but actual and imminent." *Id.* Additionally, "[p]ast harm is not a basis for injunctive relief." *See Heralds of Gospel Found., Inc. v. Varela*, No. 2017 WL 3868421, at *7, n.4 (S.D. Fla. June 23, 2017) (citing *Hoop Culture, Inc. v. Gap, Inc.*, 648 Fed.Appx. 981, 986 (11th Cir. 2016) (holding that a showing of likely future injury—as opposed to past harm—is needed to meet the irreparable harm component). Plaintiff must demonstrate evidence of a "real and immediate threat of future injury." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983). It is not sufficient to show that irreparable harm is <u>possible</u>. "A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Winter*, 555 U.S. at 22. Plaintiff is not entitled to a presumption of irreparable harm. However, Plaintiff fails to even show the possibility of irreparable harm.

39.     Here, Plaintiff summarily asserts in a single conclusory paragraph that "irreparable harm will occur to Plaintiff and other citizens." [ECF No. 48] at ¶ 5. He does not specify any specific injury that he will suffer if a TRO is not granted, and only offers mere speculation that potential harm may occur in the future. Plaintiff's Amended Motion offers no ultimate facts whatsoever to show that any harm is <u>likely</u> instead of merely <u>possible</u>. Plaintiff offers no legal argument nor authority to support his bare conclusory statement that "irreparable harm will occur

to Plaintiff and other citizens." Plaintiff offers mere speculation that potential harm <u>may</u> occur in the future.  Because the showing of irreparable injury is the most important prerequisite for issuance of a preliminary injunction, speculative injury is not sufficient. Plaintiff barely describes the possibility of some remote future injury, much less making a clear showing of a presently existing actual threat. The absence of a clear showing that irreparable injury is <u>likely</u> in the absence of a preliminary injunction/TRO, standing alone, requires denial of Plaintiff's Amended Motion.

**V.      The Balance of Equities Does Not Weigh in Favor of Granting a Preliminary Injunction, and a Preliminary Injunction Is Not in the Public Interest Because It Would Inhibit the Efficient and Proper Functioning of Government.**

40.     Regarding the balance of the equities, Plaintiff must show that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing parties. *Siegel*, 234 F.3d at 1176. The Court must balance the hardships to both sides. Like above, Plaintiff devotes only a single conclusory paragraph to the issue of balance of equities. [ECF No. 48] at ¶ 6. Plaintiff fails to address this factor substantively, precluding entry of an injunction.

41.     Regardless, the balance of the equities tips strongly in favor of Defendants. The Palm Beach County Defendants must conduct public business efficiently and in the best interests of the citizens of Palm Beach County—that is the fundamental charge of their offices as required by law. An injunction that prevents upholding a duly enacted law necessarily irreparably harms the State.  *See, e.g., Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018); *Maryland v. King*, 567 U.S. 1301, 1303 (2012). Where the party opposing equitable relief is the government, consideration of the public interest "merge[s]" with irreparable harm to the government." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public has a strong interest in laws duly passed by its representative branch of government, and thus the public interest and harm to the State mitigate against injunctive relief.

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).

42. Plaintiff's most serious possible future injury is removal from public meetings based on his actions and words under applicable law. Plaintiff is already barred from future Canvassing Board meetings based on his prior noncompliance in accordance with the promulgated rules referenced herein. Limiting the rights of the Supervisor and Sheriff specifically, and thereby the public generally, via preliminary injunction in connection with the conduct of public business at public meetings jeopardizes the efficient and proper function of public business in the crucial area of elections and democracy. Prohibiting the Palm Beach County Defendants from carrying out duly enacted laws irreparably harms the public and weighs against entry of an injunction.

43. The Court must decide whether the preliminary injunction, if issued, will "disserve the public interest." *See Varela*, 2017 WL 3868421, at *8. The efficient and proper functioning of Palm Beach County government regarding elections and democracy is a substantial public interest that far outweighs Plaintiff's politically motivated effort at grinding Palm Beach County government to a halt in the area of elections, and otherwise distracting his political opponent in an upcoming election.

44. Therefore, Plaintiff fails to establish that the balance of equities tips in his favor or that entry of the injunction would serve the public interest. The absence of a clear showing that the equities and public interest weigh in Plaintiff's favor, standing alone, requires denial of Plaintiff's Amended Motion.

**VI.    Defendant Mi Familia Vota Is Not Subject to Personal Jurisdiction in Florida.**

45. "Whether a federal court has personal jurisdiction over a defendant is a question of law." *Ash v. Royal Caribbean Cruises Ltd.*, 991 F.Supp.2d 1214, 1216 (S.D. Fla. 2013). "A

defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). "Under Florida law, the plaintiff bears the burden of proving personal jurisdiction[.]" *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).

46.     Defendant Mi Familia Vota is a 501(c)(4) non-profit incorporated in the state of Texas. *See* Declaration of Chief Financial Officer of Defendant Mi Familia Vota, Paul Edmeier, attached hereto at *Exhibit "C."* It does not have an office in Florida, it does not have any employees in Florida, and it does not engage in any grassroot activities in Florida. *See id.* To determine whether Defendant Mi Familia Vota is subject to personal jurisdiction in Florida, the court must determine (1) whether the state long arm statute permits assertion of jurisdiction, (2) whether minimum contacts exist to satisfy the due process requirements of the Fourteenth Amendment; and (3) whether the maintenance of the suit would offend traditional notions of fair play and substantial justice. *See DiMaggio, LLC v. City, Cnty. Of San Fransisco*, 187 F.Supp.2d 1359, 1364 (S.D. Fla. 2000).

### a.   Florida's Long Arm Statute Does Not Permit Assertion of Jurisdiction.

47.     Florida's Long-Arm Statute identifies nine (9) specific acts "subjecting person[s] to jurisdiction of [the] courts of [this] state." Fla. Stat. §48.193(1)(a)(1)-(9).  Notably, many of the acts lack even tangential relevance to the legally deficient allegations in Plaintiff's Amended Motion (or Second Amended Complaint).[15] Plaintiff's failure to specify which act (purportedly) subjects Defendant Mi Familia Vota to personal jurisdiction in Florida necessitates denial of Plaintiff's Amended Motion. *See, e.g., Stubbs v. Wyndham Nassau Resort and Crystal Palace*

---

[15] For example, §48.193(5), Florida Statutes, relates to proceedings for alimony, child support, or division of property, while §48.193(8), Florida Statutes, applies to paternity proceedings.

*Casino*, 447 F.3 1357, 1360 (11th Cir. 2006) ("Stubbs, as the plaintiff, has the burden of establishing a prima facie case of personal jurisdiction.").

48.     While section 48.193(1)(a)(1) permits a court to exercise personal jurisdiction over non-residents that operate, conduct, engage in, or carry on business in Florida of that have an office in Florida, Defendant Mi Familia Vota does not engage in grassroot activities in Florida, nor does it have an office in the state of Florida.  *See Exhibit "C."* Furthermore, Plaintiff does not allege that Defendant breached a contract that required performance in Florida, that Defendant was engaged in solicitation in Florida, or that products, materials, or things processed, serviced, or manufactured by Defendant were used or consumed in Florida in the ordinary course of commerce or trade. *See* Fla. Stat. § 48.193(1)(a)(6) and (7).

49.     Plaintiff's failure to establish personal jurisdiction over Defendant under Florida's long arm statute mandates denial of his Amended Motion against Defendant. *See Republic of Panama,* 119 F.3d at 940 ("A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings.").

**b.   Minimum Contacts Do Not Exist and Maintenance of the Suit Does Offend Traditional Notions of Fair Play and Substantial Justice.**

50.     To constitute "minimum contacts" for purposes of personal jurisdiction, a defendant's contacts with Florida must be related to plaintiff's allegations and involve some act by which the defendant purposefully availed itself of the privilege of conducting activities in Florida such that it should reasonably anticipate being subject to jurisdiction in Florida.  *See, e.g., Walack v. Worldwide Machinery Sales, Inc.*, 278 F.Supp.2d 1358, 1367-68 (M.D. Fla. 2003).  In this instance, Plaintiff cannot meet his burden.

51.     As stated above, Defendant is a 501(c)(4) non-profit incorporated in the state of Texas with no activities in Florida.  Defendant does not have an office in Florida, it does not have

any employees in Florida, and it does not engage in any grassroot activities in Florida. *See Exhibit "C."* Even if Defendant had "[r]andom, attenuated, or fortuitous contact" with the state of Florida (which it does not), such contacts would be <u>insufficient</u> to satisfy the minimum contacts required for personal jurisdiction. *See Walack*, 278 F. Supp.2d at 1368 (citing *Sun Bank, N.A. v. E.F. Hutton & Co. Inc.*, 926 F.2d 1030, 1034 (11th Cir. 1991)).

52.    Plaintiff's failure to meet his burden under federal law further mandates denial of his Amended Motion.  *See, e.g., Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1221 (11th Cir. 1999) (affirming the district court's dismissal of claims "for which it lacked personal jurisdiction….").

## **<u>CONCLUSION</u>**

53.    Pursuant to Fed. R. Civ. P. 7(b) and S.D. Fla. L.R. 7.1(c), all Defendants, by and through undersigned counsel file this Combined Response in Opposition to Plaintiff's Amended Motion for Temporary Restraining Order. For the reasons discussed above, this Court should deny Plaintiff's Amended Motion. Plaintiff does not meet the Supreme Court's four (4) part test for issuing a preliminary injunction or TRO. Plaintiff cannot succeed on the merits because he lacks standing due to absence of an injury-in-fact and his claims are not ripe for review. Additionally, Plaintiff has not demonstrated irreparable injury, that the balance of equities weighs in his favor, or that the preliminary injunction is in the public interest.

WHEREFORE, Defendants respectfully request that this Court enter an Order (1) denying Plaintiff's Amended Motion for Temporary Restraining Order; and (2) providing any such other and further relief deemed appropriate by this Honorable Court.

**Dated: October 3, 2024**

Respectfully Submitted,

By: /s/ James O. Williams, Jr., Esq.
James O. Williams, Jr., Esq.
Florida Bar No. 614513
Service to: eservice@wlclaw.com
Attorney for Defendant Palm Beach
County Sheriff's Office
Williams, Leininger & Cosby, P.A.
11300 US Highway One
Suite 300
North Palm Beach, FL 33408
Telephone: 561-615-5666
Facsimile: 561-615-9606

By: /s/ Thomas E. Jablonski
Thomas E. Jablonski, Esquire
Assistant County Attorney
Florida Bar No. 121866
Counsel for Defendants Greg Weiss
and Maria Marino
300 North Dixie Highway, Suite 359
West Palm Beach, FL 33401
Tel.: (561) 355-2999
Fax: (561) 355-4234
Primary: TJablonski@pbc.gov
Secondary: SClancy@pbc.gov
            LDennis@pbc.gov

**JECK, HARRIS, RAYNOR & JONES, P.A.**
*Counsel for Wendy Sartory Link,*
*Supervisor of Elections for*
*Palm Beach County, Florida*
790 Juno Ocean Walk, Suite 600
Juno Beach, Florida 33408
**Telephone**: (561) 746-1002
**Facsimile**: (561) 775-0270

By: /s/ David K. Markarian
David K. Markarian
Florida Bar No. 480691
dmarkarian@jhrjpa.com
David R. Glickman
Florida Bar No. 118685
dglickman@jhrjpa.com
Juanita Solis
Florida Bar No. 1018205
jsolis@jhrjpa.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record, on October 3, 2024.

By:

*/s/ David K. Markarian*
David K. Markarian, Esq.
Counsel for Wendy Sartory Link

*/s/ James O. Williams, Jr., Esq.*
James O. Williams, Jr., Esq.
Counsel for Ric Bradshaw

*/s/ Thomas E. Jablonski*
Thomas E. Jablonski, Esq.
Counsel for Greg Weiss and Maria Marino

*/s/ Timothy L. Newhall*
Timothy L. Newhall, Esq.
Counsel for James Cord Byrd, Ashley Moody, Maria Matthews, and Dave Kerner

*/s/ Joseph S. Van de Bogart*
Joseph S. Van de Bogart, Esq.
Counsel for Secretary of State

*/s/ Ashley E. Davis*
Ashley E. Davis, Esq.
Counsel for Secretary of State

*/s/ Jeremy F. Goldstein*
Jeremy F. Goldstein, Esq.
Counsel for Mi Familia Vota