UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

JEFFERY BUONGIORNO,

*Plaintiff,*

vs.                                                    CASE NO.:9:24-cv-80920-

ALEJANDRO MAYORKAS, in his

official capacity as the Secretary of

the United States Department of

Homeland Security, et al.,

*Defendants.*

_____/



**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

### Table of Contents

Memorandum of Law ................................................................ 1

First Amendment Violations ....................................................... 2

Plaintiff Properly Stated Claims .................................................. 3

Defendants' Arguments Regarding Jurisdiction Fail ............... 4

Defendants Byrd and Link Have Neglected Cybersecurity Threats ......................... 5

Defendants' Public Statements Regarding Citizenship Verification ...................... 6

Plaintiff Asserts a Conspiracy to Influence the 2024 Election and Fraudulent Election Activities ......................................................... 7

Plaintiff Has Made Public Records Requests Contrary to Defendants' Allegations .......... 8

Plaintiff Does Not Need to Allege Each Defendant is Guilty of Every Count ....... 9

Conclusion ............................................................... 10

**Table of Authorities and Cases**

Abbot Labs v. Gardner, 387 U.S. 136 (1967) ........................................................ 5

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................ 3

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ........................................ 3

Claire v. Fla. Dept. of Mgmt. Serv., 504 F. Supp. 3d 1328 (N.D. Fla. 2020) ...... 5

DiMaggio, LLC v. City, Cnty. of San Francisco, 187 F. Supp. 2d 1359 (S.D. Fla. 2000) ...................................................................................... 6

Ex Parte Young, 209 U.S. 123 (1908) ................................................................ 4

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ............................. 6

Murthy v. Missouri, No. 23-411 (U.S. Dec. 11, 2023) ....................................... 2

Nat'l Rifle Ass'n of Am. v. Magaw, 132 F.3d 272 (6th Cir. 1997) ..................... 2, 5

Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209 (11th Cir. 1999) .......................... 6

Socialist Workers Party v. Leahy, 145 F.3d 1240 (11th Cir. 1998) ................... 5

**Statutes & Constitutional Provisions**

U.S. Const. amend. XI ........................................................................................ 4

Fla. Stat. § 48.193(1)(a) ..................................................................................... 6

Florida Statute § 768.28 ..................................................................................... 5

Fla. Stat. § 97.041 .............................................................................................. 7

Fla. Admin. Code § 12-2.039 ............................................................................. 7

## **MEMORANDUM OF LAW**

Pursuant to S.D. Fla. L.R. 7.1, Plaintiff, Jeffrey Buongiorno, respectfully submits this response to

the Defendants' Motion to Dismiss ("MTD") (ECF 67), and urges the Court to deny Defendants'

motion based on the following arguments.

### **First Amendment Violations**

1.  The crux of Plaintiff's complaint involves clear First Amendment violations stemming

    from the wrongful exclusion of the Plaintiff from public canvassing board meetings.

    Defendants argue Plaintiff lacks standing and fails to state a ripe claim (MTD, p. 7).

    These arguments are both legally and factually flawed.

2.  Plaintiff has made two public records requests for the video footage of the August 9th

    canvassing board incident. Both requests only produced footage showing a deputy sheriff

    escorting Plaintiff out of the meeting. However, when Plaintiff requested video of the

    entire canvassing board meeting, Plaintiff received a response stating that no records

    match this request. This raises significant concerns that the Defendants may have

conspired to cover up the ejection and prevent Plaintiff's return to future canvassing board meetings.

3. Additionally, Plaintiff asserts that the motivation to prohibit Plaintiff from attending future meetings was to allow Defendants to implement rule change 1S-2.027 and masquerade blank ballot reporting, thus violating both Plaintiff's First Amendment rights and the transparency of the electoral process.

4. As noted in Murthy v. Missouri, No. 23-411 (U.S. Dec. 11, 2023), when individuals are explicitly targeted by government actions, as the Plaintiff was here, standing is established. Plaintiff was repeatedly wrongfully removed from public meetings, causing direct harm to his First Amendment rights to free speech and public participation.

5. Defendants cite Nat'l Rifle Ass'n of Am. v. Magaw, 132 F.3d 272 (6th Cir. 1997), to argue that the Plaintiff's claims are not ripe because the Plaintiff seeks to prevent future harm. However, this case is not analogous. Nat'l Rifle Ass'n of Am. deals with a pre-enforcement challenge to the constitutionality of federal statutes regulating firearms—far removed from this case where the Plaintiff has already suffered direct harm through the violation of his rights. There is nothing hypothetical about the violations alleged here; the wrongful eviction from public meetings has already occurred, making the claims ripe for adjudication.

6.  The First Amendment violations in this case are well-documented through video

    evidence, and Plaintiff's request for injunctive relief is not based on speculative future

    harm but on actual and ongoing violations of constitutional rights.


### Plaintiff Properly Stated Claim

**7.** Defendants' next contention is that the complaint fails to state a claim, relying on Twombly

and Iqbal to argue that the claims lack sufficient factual matter (MTD, p. 7). This argument is

unsupported by the extensive facts and evidence presented in the complaint.

8. Contrary to the Defendants' assertion, Plaintiff's complaint is replete with specific instances

of the Defendants' actions that violated Plaintiff's constitutional rights. The video evidence of

Plaintiff's wrongful exclusion from public meetings, as referenced in the complaint, provides

clear, factual support for these claims.

9. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court emphasized that while

conclusory allegations are insufficient, a complaint must merely state plausible claims for relief.

Here, Plaintiff has provided detailed factual allegations and attached supporting evidence,

thereby surpassing the plausibility standard.

**Immunity Does Not Apply**

10. The Defendants' argument that they are shielded by sovereign immunity under the Eleventh Amendment is without merit. Ex Parte Young, 209 U.S. 123 (1908), provides a well-established exception to sovereign immunity for suits seeking injunctive relief to halt ongoing violations of federal law by state officials. All defendants have a connection to the laws related to elections,

11. Plaintiff seeks injunctive relief for the Defendants' ongoing violations of First Amendment rights, which strips Defendants of any claim to immunity. Further, under Florida Statute § 768.28, the state has waived sovereign immunity in actions involving injunctive relief, rendering Defendants' immunity defense invalid in this case.

12. Additionally, any willful or negligent violations of federal law by state officials, as alleged here, result in immunity being forfeited. The Supreme Court has consistently held that willful or negligent misconduct that leads to constitutional violations negates immunity. Defendants have failed to cite any valid legal authority to counter this exception.

**Defendants' Arguments Regarding Jurisdiction Fail**

13. Defendants claim that this Court lacks personal jurisdiction over the non-resident defendant, Mia Familia Vota (MTD, p. 23). This argument is unsupported by the facts. Under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a), personal jurisdiction exists where a defendant conducts business or engages in activities within the state.

14. Plaintiff has video evidence and witnesses attesting to Mia Familia Vota's active registration of non-citizens in Florida, thus satisfying the minimum contacts requirement under International Shoe Co. v. Washington, 326 U.S. 310 (1945). Further, Mia Familia Vota was properly served at its corporate headquarters located in Orlando, Florida, and is registered as a foreign not-for-profit corporation in Florida (Document Number F12000000567). These facts demonstrate that Mia Familia Vota has substantial contacts with Florida, and is subject to personal jurisdiction under Fla. Stat. § 48.193(1)(a).

15. The elements for establishing personal jurisdiction over a non-resident defendant are clearly met. As stated in Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209 (11th Cir. 1999), the Court must determine whether minimum contacts exist for jurisdiction. Given Mia Familia Vota's operations in Florida, including its efforts to register non-citizens to vote and its corporate presence in Orlando, it has sufficient minimum contacts to meet the jurisdictional requirements. Therefore, Plaintiff has established that this Court has personal jurisdiction over all named defendants.

### Defendants Byrd and Link Have Neglected Cybersecurity Threats

16. In paragraph 4, section B of the Defendants' Motion to Dismiss, Defendants argue that the claims regarding their lack of action on cybersecurity threats are speculative and unsupported. However, Defendant Byrd and Defendant Link have, in fact, turned a blind eye to significant cybersecurity threats. This failure to act is demonstrated by their inaction in responding to known vulnerabilities and their inadequate efforts to address cybersecurity risks related to the election system infrastructure.

17. The Plaintiff, in his investigation, has recently discovered a malicious ransomware executable file persistent in the VR Systems infrastructure as of October 17, 2024. This alarming discovery directly impacts the integrity of the election infrastructure managed by VR Systems, which is used widely throughout the state for election management.

18. Additionally, on October 18, 2024, multiple reports of outages affecting the electionsfl.org domain, which is also managed by VR Systems, further demonstrate the vulnerability and failure of the cybersecurity infrastructure. These outages align with the discovery of the ransomware, and Plaintiff asserts that these events are directly connected to the cybersecurity failures alleged in this case.

19, Moreover, Plaintiff is overwhelmed with information and real-time evidence streaming in, including public records that show vote-by-mail analytics being altered, further confirming the systemic failures in Florida's election infrastructure and record-keeping.

### Evidence of Cybersecurity Failures

20. Lack of Adequate Response to Known Vulnerabilities: Despite being aware of cybersecurity vulnerabilities in Florida's election systems, neither Defendant Byrd nor Defendant Link have taken meaningful steps to address these risks. These vulnerabilities have been reported by various governmental and independent agencies, yet no substantial actions have been taken to rectify the issues.

21. Failure to Implement Security Upgrades: Defendants have failed to ensure that adequate cybersecurity upgrades are in place to prevent hacking, data breaches, and other cyber-related

incidents that could compromise the integrity of Florida's election systems. This is particularly

concerning given the known risks of foreign and domestic cyber threats to election infrastructure.

22. Failure to Address the Recommendations of Cybersecurity Experts: Cybersecurity experts

have made recommendations for improved security measures to prevent unauthorized access to

voter data and election systems. However, Defendants Byrd and Link have not implemented

these measures, leaving Florida's election infrastructure vulnerable to cyberattacks. Defendants

Byrd and Link claim to rely on the Cybersecurity Infrastructure Security Agency (CISA) for

guidance. CISA falls under umbrella of the Department of Homeland Security, and leadership of

Impeached Alejandro Mayorkas, who is a defendant in in State of Florida V. The Department of

Homeland Security. Case 3:24-cv-00509-TKW-HTC, Exhibit P 24.

23. The inaction by Defendants Byrd and Link regarding cybersecurity threats is not speculative,

as the Defendants suggest. There is a clear pattern of negligence in addressing known

cybersecurity risks to Florida's election infrastructure, which further supports the Plaintiff's

claims. Their failure to act has left voter data and election systems exposed to potential

cyberattacks, thereby jeopardizing the integrity of the electoral process.

### Defendants' Public Statements Regarding Citizenship Verification

24. In paragraph 4 of the Defendants' Motion to Dismiss, Defendants acknowledge that

citizenship verification is at issue. Defendant Byrd has publicly stated that the Department of

Homeland Security (DHS) is not cooperating with efforts to verify citizenship for voter registration purposes. This is a significant admission that underscores the ongoing issue with compliance from federal authorities.

25. Additionally, Defendant Cord Byrd is currently the Florida Secretary of State, and the Florida Department of State is a plaintiff in Florida v. Department of Homeland Security, Case No. 3:24-cv-00509 (N.D. Fla.), a lawsuit filed by the State of Florida against DHS for its failure to provide citizenship verification information. This case further demonstrates that Florida's election officials are facing challenges in verifying citizenship due to non-cooperation from DHS, which is highly relevant to the claims in this action.

26. Furthermore, Defendant Link has publicly stated that she relies on "The State" to verify citizenship status, which may violate the Florida Sunshine Law (Fla. Admin. Code § 12-2.039), Fla. Stat. § 97.041, and Article 6, Section 2 of the Florida Constitution, all of which require accurate citizenship verification in the electoral process. Defendants' public acknowledgment of the lack of federal cooperation bolsters Plaintiff's claims regarding voter registration irregularities and the inability to prevent non-citizens from voting.

**Plaintiff Asserts a Conspiracy to Influence the 2024 Election and Fraudulent Election Activities**

27. In paragraph 4, section C of the Defendants' Motion to Dismiss, Plaintiff asserts that a massive conspiracy exists to cover up efforts to influence the 2024 election. Plaintiff refers to Exhibits P5 through P22 in support of this assertion.

28. Plaintiff alleges that Defendants have conspired to masquerade the reporting of blank ballots through a rule change, allowing fraudulent election results to be manipulated. Furthermore, Defendants have altered public records related to the volume of mail-in ballots sent on a single day, as evidenced by Exhibits P13, P21, and P22.

29. Moreover, Plaintiff contends that Defendants have intimidated citizens from challenging signatures that appear to be digitally cloned, a tactic allegedly used to push fraudulent ballots through the election system in large numbers, Exhibit P20. As the 2024 election day draws nearer, the fraudulent activities described in these exhibits are becoming exponentially more visible.

30. The situation remains fluid, and as Plaintiff responds to this Motion to Dismiss, credible reports continue to flood Plaintiff's inbox regarding the alteration of public records to disguise the true vote-by-mail analytics. A recent press release dated 10/18/2024, from elected official Joe Lafauci states that 10,203 vote-by-mail requests were mailed without proof of ID. Moreover, the Florida Department of State has conducted an investigation strongly suggesting that over 30

percent of ballot petitions submitted in favor of adding Ballot Measure 4 to the 2024 ballot were fraudulent[1]

31. Plaintiff maintains that these actions constitute an orchestrated conspiracy to influence the outcome of the election, directly infringing upon Plaintiff's rights and the integrity of the electoral process. The Plaintiff's claims are well-supported by documentary evidence and public records that detail these fraudulent practices and conspiratorial activities.

## Plaintiff Has Made Public Records Requests Contrary to Defendants' Allegations

32. In paragraph two on page 2 of the Defendants' Motion to Dismiss, Defendants incorrectly assert that Plaintiff has not made public records requests. This claim is patently false. Plaintiff has, in fact, made hundreds of public records requests as part of his work with various organizations, such as the Justice Society.

33. Plaintiff's public records requests have included a broad range of inquiries related to Vote By Mail Data, canvassing board meetings, hundreds of fictitious address who were sent Vote By Mail Ballot, Work Orders, Purchase Orders and Evidence that a Battery on a computer was

---

[1] oecs-interim-report-10-11-2024.pdf (floridados.gov)

replaced, a preposterous claim that a dead battery would cause a system to default to September 13, 1984 as well as the IP addresses of Vote By Mail Request made online, Exhibit P6.

34. The assertion that Plaintiff has not made public records requests is entirely untrue and contradicted by the significant number of requests made over the course of his work. These records requests are a key component of the Plaintiff's investigation into election irregularities, and this false claim by the Defendants should be rejected outright.

### Plaintiff Does Not Need to Allege Each Defendant Is Guilty of Every Count

35. In paragraph 2 of their Motion to Dismiss, Defendants argue that Plaintiff has failed to allege that each defendant is guilty of every count. This argument misinterprets the requirements for pleading and misrepresents the allegations.

36. Plaintiff is not required to allege that every defendant is guilty of every count. The Federal Rules of Civil Procedure allow claims to be made against specific defendants based on their individual actions. Plaintiff has properly pled allegations against each relevant defendant and clearly identified the defendants responsible for each count.

37. Each count in the complaint outlines the actions or omissions taken by the relevant defendants. For instance, the claims related to the First Amendment violations are specifically directed at the defendants involved in the wrongful exclusion from canvassing board meetings, while other counts address defendants responsible for failures related to voter registration and election integrity.

38. The Defendants' argument that each defendant must be implicated in every count is legally

unfounded. Courts, including in Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209 (11th Cir. 1999),

have held that specific involvement of each defendant is sufficient, and group pleading is

permissible when it provides sufficient notice to each defendant. Plaintiff's allegations are

sufficiently specific to meet the legal standard under Rule 8 of the Federal Rules of Civil

Procedure.

**Not a Writ of Mandamus**

39. On page 12 of the MTD, they argue that this case is really an improper *writ of mandamus*.

That is an absurd argument for which they proffer no case law in support.

40. The arguments made on pages 14-19 of the MTD are also incorrect. This Complaint is indeed

substantial and it is not a shotgun pleading.

**Conclusion**

For the foregoing reasons, the Defendants' Motion to Dismiss must be denied in its entirety. The Plaintiff has sufficiently alleged First Amendment violations, properly stated plausible claims, and demonstrated that immunity does not apply in this case. Moreover, this Court has jurisdiction over all defendants, including Mia Familia Vota, and the claims are ripe for adjudication. Additionally, the Plaintiff's allegations are properly pled against each defendant based on their specific conduct, and there is no requirement that each defendant be implicated in every count. Finally, the Defendants' public statements regarding citizenship verification, their failure to address cybersecurity threats, and the alleged conspiracy to influence the 2024 election confirm the significant issues at play regarding election integrity and the violations alleged by the Plaintiff.

Plaintiff respectfully requests that this Court deny the Defendants' Motion to Dismiss.

Respectfully submitted,

Jeff Buongiorno

1901 South Congress Ave, #220

Boynton Beach, FL 33426

Jeff@etektraining.com

# EXHIBIT P23

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

STATE OF FLORIDA and the
FLORIDA DEPARTMENT OF STATE,

    *Plaintiffs,*

v.                                                    Case No. 24-cv-500

The DEPARTMENT OF HOMELAND
SECURITY; and ALEJANDRO
MAYORKAS, in his official capacity
as Secretary of the United States
Department of Homeland Security,

    *Defendants.*

_____/

## COMPLAINT FOR
## PERMANENT INJUNCTIVE RELIEF

1.    Since taking office, the Biden-Harris Administration has "effectively turned the Southwest Border into a meaningless line in the sand and little more than a speedbump for aliens flooding into the country." *Florida v. United States*, 660 F. Supp. 3d 1230, 1240 (N.D. Fla. 2023).

# EXHIBIT P 24

**FOR IMMEDIATE RELEASE**

Further Questions Arise Over Palm Beach County Voter Roll Integrity

October 16, 2024 – Palm Beach County, FL – Ongoing concerns regarding Palm Beach County's voter verification and roll maintenance practices continue to mount following the discovery of over 117,000 questionable voter registrations. Recent data analysis has revealed potential gaps in the verification process, raising questions about the integrity of the county's election procedures.

Supervisor of Elections Wendy Sartory Link, speaking at a recent forum hosted by the Urban League of Palm Beach County, emphasized that voter identities are confirmed through the use of ID numbers or Social Security digits. However, a deeper investigation of voter roll data suggests that significant issues may still exist, potentially undermining these verification efforts.

These findings, based on publicly available data from the Supervisor of Elections office, were outlined in an email sent to Mrs. Link, further elaborating on unresolved issues. Despite several public records requests submitted as early as May 2024, attempts to address concerns such as unverified Vote-By-Mail (VBM) requests, duplicate voters, and invalid or incomplete residential addresses have not yielded satisfactory responses.

One particularly troubling instance involves the file labeled 'PAL_VBM_43887_20240823_001053,' which revealed 10,203 Vote-By-Mail requests where no valid Florida ID or Social Security Number verification was recorded—marked with an 'N' for both fields. A request for clarification, identified as Public Record Request 24-961, was dismissed without explanation. This has led to further frustration, as follow-up inquiries have not been adequately addressed.

Exhibit 1: Unverified Vote-By-Mail Requests

Florida Statute 101.62 2(2) requires a voter to provide a Florida Driver's License, a Florida ID card, or the last four digits of their Social Security Number when requesting a Vote-By-Mail ballot. As of October 16, 2024, data shows 16,875 Vote-By-Mail requests were made without any such verification, and 6,756 of those ballots have already been returned. In the absence of clear responses from the SOE, these discrepancies continue to raise doubts about the enforcement of voter verification laws.

Exhibit 2: Incomplete and Invalid Addresses

Additionally, records reveal 31,015 voter registrations without necessary apartment or unit numbers, making it difficult to ensure proper mail delivery. Another 239 registrations are linked to addresses that are not suitable residences, such as FedEx, UPS, and post office locations. Public records show that concerns about these addresses were raised with the Supervisor of Elections office months ago, yet no action appears to have been taken.

Exhibit 3: Slow Removal of Inactive Voters

Florida Statute 98.065 mandates the removal of inactive voters who have not voted in over eight years. Analysis shows there are currently 44,370 such voters on the rolls, yet the SOE has been removing only about 50 inactive voters per month. This slow pace of removal, particularly when coupled with backlogged voter registrations, poses risks to election integrity.

Exhibit 4: Unanswered Queries and Public Record Requests

Despite the pressing nature of these issues, a number of public records requests remain unfulfilled, including repeated attempts to obtain a legend and definition for the columns "Voter_FLDL_StateID" and "VoterSSN4" in the SOE-provided file, which marked tens of thousands of voters with an unexplained 'Y' or 'N.' These requests, which were intended to assist the SOE in resolving voter roll discrepancies, have gone unanswered.

Summary of Findings

The detailed analysis of Palm Beach County's voter rolls and communication with the SOE's office reveals ongoing gaps in verification, maintenance, and transparency. The public remains concerned about unverified Vote-By-Mail requests, incomplete residential information, slow removal of inactive voters, and the SOE's lack of response to critical data queries.

The detailed analysis of Palm Beach County's voter rolls and communication with the SOE's office reveals ongoing gaps in verification, maintenance, and transparency. The public remains concerned about unverified Vote-By-Mail requests, incomplete residential information, slow removal of inactive voters, and the SOE's lack of response to critical data queries.

As election day approaches, further clarification and action from the SOE are expected. Timely resolution of these issues is essential to ensure public confidence in the election process and the integrity of the voter rolls.

For more information, please contact:

Joe LaFauci
(813) 210-5563

###